**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**Terre Haute Division**

---

| | |
|---|---|
| UNITED STATES OF AMERICA and )<br>THE STATE OF INDIANA )<br> )<br>    Plaintiffs, )<br> )<br>         v. )<br> )<br>LONE STAR INDUSTRIES, INC. )<br> )<br>    Defendant. )<br>_____ ) | Civil Action No. <u>2:21-cv-233</u> |

---

## <u>COMPLAINT</u>

Plaintiffs, the United States of America, by the authority of the Attorney General, through its undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency (EPA), and the State of Indiana, by the authority of the Attorney General of Indiana, acting at the request of the Indiana Department of Environmental Management (IDEM) hereby file this Complaint and allege the following.

## <u>NATURE OF THE ACTION</u>

1.      This is a civil action brought pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b) (the CAA) by federal and state government Plaintiffs for injunctive relief and the assessment of civil penalties against Defendant Lone Star Industries, Inc. d/b/a/ Buzzi Unicem USA (Buzzi or Defendant) alleging violations of the following federal and state authorities at Defendant's cement manufacturing facility (the Facility) located in Greencastle, Indiana:

> National Emission Standards for Hazardous Air Pollutants (NESHAPs), also
> known as the Maximum Achievable Control Technology standards (MACT), for

Hazardous Waste Combustors, promulgated by EPA pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart EEE (40 C.F.R. §§ 63.1200-1221);

NESHAP/MACT for the Portland Cement Manufacturing Industry, promulgated by EPA pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart LLL (40 C.F.R. §§ 63.1340-1359);

NESHAP/MACT for Off-Site Waste and Recovery Operations, promulgated by EPA pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart DD (40 C.F.R. §§63.680-698);

NESHAP/MACT General Provisions, promulgated by EPA pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart A (40 C.F.R. §§ 63.1-16);

The federally-enforceable state implementation plan of the State of Indiana (Indiana SIP), Title 326 of the Indiana Administrative Code (IAC) Article 5 (326 IAC 5);

Federally-enforceable operating permits issued to the Facility pursuant to Title V of the CAA, 42 U.S.C. § 7661, and 326 IAC 2-1 (Permit Nos. T-133-33667-0002 and T-133-26380-0002) that incorporate the above-listed NESHAP/MACT and Indiana SIP requirements; and

Indiana Administrative Code Provisions that incorporate NESHAP/MACT requirements set forth above.

## JURISDICTION, VENUE, AUTHORITY AND NOTICE

2.     This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.  The Court has personal jurisdiction over the Parties.

3.     Venue is proper in this judicial district pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b)-(c) and 1395(a) because Defendant is located in this judicial district and the violations alleged herein occurred within this district at the Facility.

4.     Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the CAA, 42 U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519.

5.      Authority to bring this action for the People of the State of Indiana is vested in the Indiana Attorney General.  The Indiana Attorney General is the chief legal officer of the State of Indiana having the powers and duties prescribed by the law, Indiana Code (IC) § 4-6-1-6. Pursuant to IC § 13-13-5-1, IDEM is charged with the administration and enforcement of the requirements for air pollution for Indiana for all purposes of the CAA.

6.      Pursuant to Section 113(a) and (b) of the CAA, 42 U.S.C. § 7413(a) and (b), the United States has given the State of Indiana and Defendant notice of the violation of the Indiana SIP opacity requirements alleged in the Fifteenth Count below more than thirty days before the filing of this Complaint.

## II.   PARTIES

7.      Plaintiff, the United States of America is acting at the request of EPA, an agency of the United States.

8.      Plaintiff, the State of Indiana is acting at the request of IDEM, an agency of the State of Indiana.

9.      Defendant Lone Star Industries, Inc. is a corporation organized under the laws of the State of Delaware.  Lone Star Industries, Inc. does business under the name Buzzi Unicem USA.

10.     Defendant is a "person" as defined by Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and IC 13-11-2 158.

## STATUTORY AND REGULATORY FRAMEWORK

### I.   THE CLEAN AIR ACT

#### A.   CAA and National Emission Standards for Hazardous Air Pollutants in General

11.   Section 112 of the CAA, 42 U.S.C. § 7412, requires EPA to promulgate regulations to address the hazardous air pollutants (HAPs) listed in Section 112(b), as revised by EPA.  42 U.S.C. § 7412(b); 40 C.F.R. Part 63, Subpart C.

12.   Section 112(d) of the CAA, 42 U.S.C. § 7412(d), requires EPA to promulgate regulations establishing emission standards for each category and subcategory of "major sources" and "area sources" of HAPs.  These emission standards are called the National Emission Standards for Hazardous Air Pollutants (NESHAPs) or Maximum Achievable Control Technology Standards (MACTs).

13.   "Major sources" are sources or groups of "stationary sources" located within a contiguous area and under common control that emit or have the potential to emit ten tons per year (TPY) or more of any HAP, or twenty-five TPY or more of any combination of HAPs. 42 U.S.C. § 7412(a)(1); 40 C.F.R. § 63.2.

14.   A "stationary source" is any building, structure, facility, or installation that emits or may emit any air pollutant.  42 U.S.C. § 7412(a)(3) (by reference to 42 U.S.C. § 7411(a)).

15.   Section 112(f)(4) of the CAA, 42 U.S.C. § 7412(f)(4), provides that, with certain exceptions not applicable in this case, "[n]o air pollutant to which a standard under this subsection applies may be emitted from any stationary source in violation of such standard . . . ." Thus, a violation of a NESHAP/MACT is a violation of the CAA.

16.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA has promulgated multiple NESHAPs/MACTs containing emission standards or, if not feasible, design, equipment, work practice, or operational standards which are codified at 40 C.F.R. Parts 61 and 63.   The NESHAP/MACTS relevant to this Complaint, described below, are NESHAP Subpart A, MACT Subpart EEE, MACT Subpart LLL, and MACT Subpart DD.

**B.     NESHAP Subpart A**

17.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated a general NESHAP (NESHAP Subpart A), which applies to all sources that are subject to NESHAP/MACT regulations in 40 C.F.R. Part 63.  40 C.F.R. §§ 63.1-63.16.  Under NESHAP Subpart A, each relevant NESHAP/MACT must identify which NESHAP Subpart A regulations apply to the sources covered by that NESHAP/MACT.  40 C.F.R. § 63.1(a)(4)(i).

18.     NESHAP Subpart A sets forth definitions that apply to other NESHAP/MACT regulations.  40 C.F.R. § 63.2.

19.     At all relevant times herein, NESHAP Subpart A prohibited the owner/operator of sources subject to NESHAP/MACT regulations from using any equipment to circumvent an emission standard by any method, including using diluents to achieve compliance on the concentration of a pollutant discharged to the atmosphere.  40 C.F.R. § 63.4(b)(1).  Specifically, it provides that:

> no owner or operator subject to the provisions of this part shall build, erect, install, or use any article, machine, equipment or process to conceal an emission that would otherwise constitute non-compliance with a relevant standard. Such concealment includes, but is not limited to the use of diluents to achieve compliance with a relevant standard based upon a concentration of a pollutant in the effluent discharged into the atmosphere.

C.      The HWC MACT

20.     Pursuant to Sections 112(c) and (d) of the CAA, 42 U.S.C. §§ 7412(c) and (d),

EPA has identified "hazardous waste combustors" as a category of sources of HAPs and

promulgated regulations applicable to such sources which are codified at 40 C.F.R. Part 63,

Subpart EEE (§§ 63.1200-1221) (the HWC MACT).  64 Fed. Reg. 52,828 (Sept. 30, 1999).

21.     Hazardous waste combustors emit or have the potential to emit particulate matter

(PM), metals (antimony, cobalt, manganese, nickel, selenium), semi-volatile metals (cadmium

and lead), low volatile metals (arsenic, beryllium, and chromium), dioxins and furans, carbon

monoxide (CO) and hydrocarbons, hydrogen chloride and chlorine gas, and mercury compounds,

all of which have adverse effects on human health and the environment.

22.     At all relevant times herein, the HWC MACT has imposed requirements and

emission standards on the owner/operator of "affected sources" defined as "existing" and "new"

"hazardous waste combustors" which are a major source of HAPs.

23.     At all relevant times herein, the HWC MACT has defined "hazardous waste

combustor" as including a "hazardous waste burning cement kiln" which in turn is defined as

a rotary kiln and any associated preheater or precalciner devices that produce clinker by heating

limestone and other materials for subsequent production of cement for use in commerce, and that

burns hazardous waste at any time.  40 C.F.R. § 63.1201(a).

24.     At all relevant times herein, "affected sources" subject to the HWC MACT have

consisted of "new sources" and "existing sources;" "new source" is defined as any affected

source the construction or reconstruction of which is commenced after the dates specified

under 40 C.F.R. §§ 63.1206(a)(1)(i)(B), (a)(1)(ii)(B), and (a)(2)(ii) (the latest of which is April

20, 2004) and "existing source" as "any affected source that is not a new source."  40 C.F.R. §§ 63.2, 1201.

25.     The HWC MACT established and later revised compliance dates for HWC MACT requirements for owners/operators of a hazardous waste combustor that is an "existing source," the latest of which was October 14, 2008.

26.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to comply with multiple emission limits, destruction and removal efficiency (DRE) standards and other operating parameters.

27.     At all relevant times herein, the HWC MACT has prohibited the owner/operator of a hazardous waste burning cement kiln from discharging or causing combustion gases to be emitted into the atmosphere with opacity greater than 20 percent unless the source is equipped with a Particulate Matter Detection System (PMDS).  40 C.F.R. § 63.1220(a)(7)(ii).

28.     At all relevant times herein, the HWC MACT has prohibited the owner/operator of a hazardous waste burning cement kiln equipped with a bypass duct from discharging or causing combustion gases to be emitted into the atmosphere that contain CO in excess of 100 parts per million by volume (ppmv) over an hourly rolling average (monitored continuously with a continuous emission monitoring system (CEMS)), dry basis and corrected to 7% oxygen ($O_2$). 40 C.F.R. § 63.1220(a)(5)(i)(A).

29.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to establish certain operating parameter limits (OPLs) in order to demonstrate compliance with the HWC MACT emission limits and the DRE standard. 40 C.F.R. § 63.1207(b)(1) and 40 C.F.R. §§ 63.1209(j)-(o); 40 C.F.R. § 63.1201 ("Operating

requirements means . . . operating parameter limits . . . that ensure compliance with the emission standards.").

30.    At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to confirm the adequacy of the OPLs in meeting applicable emission limits and the DRE standard by conducting Comprehensive Performance Tests (CPTs) and, after the CPT, submitting a Notification of Compliance (NOC) to EPA or a delegated state agency containing the OPLs verified by the CPT.  40 C.F.R. § 63.1207(j).

31.    At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to conduct additional CPTs no later than 61 months after the previous CPT and submit a new NOC following each CPT.  40 C.F.R. §§ 63.1207(d) and (j).

32.    At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to comply with HWC MACT emission limits, the DRE standard, and OPLs established in the NOC at all times except:

a.    during periods of startup, shutdown and malfunctions provided that the owner/operator takes the corrective measures prescribed in the startup, shutdown, and malfunction plan; and

b.    when hazardous waste is not in the combustion chamber and the owner/operator is complying with all otherwise applicable requirements and standards promulgated under authority of Section 112 of the CAA; and

c.    during performance tests under approved test plans.

*See* 40 C.F.R. §§ 63.6(e)(3), 63.1206(b)(1), (c)(1), (c)(2), and 63.1210(j)(1).

33.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to operate only under the operating requirements specified in its NOC and comply with applicable emission limits and standards by complying with the OPLs relevant to each limit or standard.  Failure to comply with an OPL relevant to an emission limit or standard constitutes failure to comply with that emission limit or standard unless the owner/operator can establish the exemptions set forth in Paragraph 32.a-c above. *See* 40 C.F.R. § 63.1206(c)(1).

34.     At all relevant times herein, the HWC MACT has required that to comply with the doxin and furans emission standard and with emission limits for semivolatile and low volatility metals, the owner/operator must comply with the OPL for the maximum gas temperature at the inlet to an electrostatic precipitator (ESP) or baghouse.  40 C.F.R. § 63.1209(k)(1)(i), (n)(1).

35.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to operate the kiln with a functioning automatic waste feed cut off (AWFCO) system that immediately and automatically cuts off the hazardous waste feed to the kiln when any OPL established under 40 C.F.R. § 63.1209 has been violated. 40 C.F.R. § 63.1206(c)(3)(i)(A).  The HWC MACT further provides that where the AWFCO system fails to automatically and immediately cut off the flow of hazardous waste upon exceedance of an OPL, the owner/operator has failed to comply with the HWC MACT AWFCO requirements and the owner/operator must "cease feeding hazardous waste as quickly as possible." 40 C.F.R § 63.1206(c)(3)(iv).

36.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to use continuous monitoring systems (CMS) to demonstrate compliance with the OPLs.  40 C.F.R. § 63.1209(b).

37.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to continuously measure minimum temperature of each combustion chamber on an hourly rolling average basis at a location that best represents, as practicable, the bulk gas temperature in the combustion zone.  40 C.F.R. § 63.1209(j)(1).

38.     At all relevant times herein, the HWC MACT has required the owner/operator of a hazardous waste burning cement kiln to submit to EPA written reports for each set of 10 exceedances of an emission standard or operating requirement while hazardous waste remains in the combustion chamber during a 60-day block period.  40 C.F.R. § 63.1206(c)(3)(vi)(A).  The reports must document the exceedances and result of investigation and corrective action taken and must be submitted to EPA within five calendar days of the 10th exceedance.  *Id.*

39.     At all relevant times herein, the HWC MACT has required for each set of 10 exceedances of an emission standard or operating requirement while hazardous waste remains in the combustion chamber of a hazardous waste burning cement kiln during a 60-day block period, that the owner/operator of the kiln within 45 days of the 10th exceedance, complete an investigation of the cause of each exceedance; evaluate approaches to minimize the frequency, duration, and severity of such future exceedances; revise the startup, shutdown, and malfunction plan (SSM Plan) as warranted by the evaluation to minimize the frequency, duration, and severity of  such exceedance; record the results of the investigation and evaluation in the operating record; and include a summary of the investigation and evaluation, and any changes to

the SSM Plan, in an excess emissions report under NESHAP Subpart A, 40 C.F.R. § 63.10(e)(3).

40 C.F.R. § 63.1206(c)(1)(v).

**D.    NESHAP Subpart LLL (PC MACT)**

40.    Pursuant to Section 112(c) of the CAA, 42 U.S.C. § 7412(c), EPA has identified

portland cement plants as a category of sources of HAPs and in 1999 promulgated

NESHAP/MACT regulations for such sources that are codified at 40 C.F.R. Part 63, Subpart

LLL ((§§ 63.1340-1359) (PC MACT).  EPA has amended the PC MACT from time to time

including, relevant to this Complaint, in 2010, 2011, 2013, 2015, and 2017.

41.    At all relevant times herein, the PC MACT has imposed requirements and

emission standards on the owner/operator of each new and existing portland cement plant which

is a major source of HAPs.  40 C.F.R. § 63.1340 *et seq*.

42.    At all relevant times herein, the PC MACT has defined "portland cement plant" as

"any facility manufacturing portland cement."  40 C.F.R. § 63.1341.

43.    At all relevant times herein, "affected sources" subject to the PC MACT have

consisted of "new sources" and "existing sources" and the PC MACT has defined "new source"

as a portland cement plant that commenced construction or reconstruction after May 6, 2009 and

"existing source" as "any affected source that is not a new source."  40 C.F.R. §§ 63.2, 63.1341,

63.1342.

44.    At all relevant times herein, the PC MACT has prohibited the owner/operator of

various components of a portland cement plant, including a raw material, clinker, or

finished product storage bin and conveying system transfer point, from causing to be discharged

from these affected sources any gases which exhibit opacity in excess of 10 percent.  40 C.F.R. § 63.1345

45.     At all relevant times herein, the PC MACT has required that the owner/operators of storage bins subject to the opacity limit in the PC MACT to conduct monthly 10-minute visible emissions monitoring in accordance with 40 C.F.R. Part 60, Appendix A EPA Method 22.  40 C.F.R. § 1350(f)(1).

46.     At all relevant times herein, the PC MACT has required that the owners/operators of affected sources comply with the recordkeeping provisions of NESHAP Subpart A, 40 C.F.R. § 63.10(b)(2)(viii), which requires that records of all opacity and visible emissions be maintained for at least five years.  *See* 40 C.F.R. § 63.1355(b).

**E.     Off-Site Waste and Recovery Operations MACT**

47.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated the NESHAP/MACT regulations for Off-Site Waste and Recovery Operations, codified at 40 C.F.R. Subpart DD (40 C.F.R. §§ 63.680-698) (Off Site Waste MACT).

48.     At all relevant times herein, the Off-Site Waste MACT requirements have applied to the owner/operator of a "plant site" that is a major source of HAPs and has a waste management operation that receives off-site material and is regulated as a hazardous waste treatment, storage, and disposal facility under Resource, Conservation and Recovery Act (RCRA) regulations codified at 40 CFR Parts 264 or 265.  40 C.F.R. § 63.680(a).

49.     At all relevant times herein, the Off-Site Waste MACT has defined "plant site" to be all contiguous or adjoining property that is under common control including properties that are separated only by a road or other public right-of-way.  Common control includes properties

that are owned, leased, or operated by the same entity, parent entity, subsidiary, or any combination thereof.  40 C.F.R. § 63.681.

50.     At all relevant times herein, the affected sources subject to the Off-Site Waste MACT have consisted of "new sources" and "existing sources" and the Off-Site Waste MACT has defined "new source" as an affected source for which construction or reconstruction commences on or after October 13, 1994 and "existing source" as any source that commenced construction or reconstruction before October 13, 1994.   40 C.F.R. §§ 63.680(e).

51.     At all relevant times herein, the Off-Site Waste MACT has applied "affected sources" within the plant sites subject to the Off-Site Waste MACT including, *inter alia,*

a.     process vents associated with waste management units and equipment components (40 C.F.R. § 63.680(c)(1)); and

b.     the entire group of equipment components for which each component meets all of the following conditions: (i) the equipment component is a pump, compressor, agitator, pressure relief device, sampling connection system, open-ended valve or line, valve, connector, or instrumentation system; (ii) the equipment component contains or contacts off-site material having a total HAP concentration equal to or greater than 10 percent by weight; and (iii) the equipment component is intended to operate for 300 hours or more during a calendar year in off-site material service. 40 C.F.R. § 63.680(c)(3).

52.     At all relevant times herein, the Off-Site Waste MACT has required the owner/operator of existing affected sources that received off-site material for the first time before February 1, 2000, to achieve compliance with the requirements of the Off-Site Waste MACT on

or before February 1, 2000, unless an extension has been granted by the Administrator as provided in 40 C.F.R. § 63.6(i).  40 C.F.R. § 63.680(e).

53.     At all relevant times herein, the Off-Site Waste MACT has required the owner/operator of affected sources to either: (1) monitor the operation of the carbon adsorption system with a continuous monitoring system to measure and record the daily average concentration level of organic compounds including total hydrocarbons (THC) in the exhaust gas stream from the control device or at an interval no greater than 20 percent of the time required to consume the total carbon working capacity at predetermined interval; or (2) replace the carbon canister or the carbon in the control device on a regular schedule, and when carbon breakthrough is indicated, immediately replace either the existing carbon canister with a new carbon canister or fresh carbon.  40 C.F.R. § 63.693(d).

54.     At all relevant times herein, the Off-Site Waste MACT has covered equipment leaks from each equipment component that is part of an affected source and required the owner/operator of an affected source to control equipment leaks by implementing leak detection and control measures in accordance with the standards specified in 40 C.F.R. § 63.691, which require the owner/operator to operate each pressure relief device in gas/vapor service with an instrument reading of less than 500 ppm above background as detected by Method 21 of 40 CFR Part 60, Appendix A.  *See* 40 C.F.R § 63.683(d); 40 C.F.R. § 691(c)(1).

55.     At all relevant times herein, the Off-Site Waste MACT has required the owner/operator of an affected source to monitor for leaks in affected sources using Method 21. 40 C.F.R. § 63.691(b)(1) and (2) (incorporating requirements of 40 C.F.R. §§ 61.241-247, 63.161-182).

56.     At all relevant times herein, the Off-Site Waste MACT has required the owner/operator of an affected source to calibrate the leak detection instrument before use on each day utilizing calibration gases at zero air (less than 10 ppmv hydrocarbon in air) and a mixture of methane or n-hexane in air at a concentration of approximately, but less than, 10,000 ppv. 40 C.F.R. § 63.694(k).

**F.     Indiana SIP**

57.     Section 110 of the CAA, 42 U.S.C. § 7410, requires each state to adopt, and submit to EPA for approval, a state implementation plan (SIP) that provides for the implementation, maintenance, and enforcement of national ambient air quality standards (NAAQS) for particular pollutants, including particulate matter.  An EPA-approved state implementation plan is also independently enforceable by the federal government under Section 113 of the CAA, 42 U.S.C. § 7413.

58.     EPA has approved the Indiana SIP which is codified at 326 IAC 5.  40 C.F.R. Part 52 Subpart P (40 C.F.R. § 52.769 *et seq*.); 67 Fed. Reg. 46,589 (July 16, 2002).

59.     At all relevant times herein, the EPA-approved Indiana SIP at 326 IAC 5-1-2 has required that opacity from a source or a facility shall not exceed an average of 40% in any one six-minute average.

**G.     Title V of the CAA**

60.     Title V of the CAA and the regulations promulgated thereunder establish an operating permit program for certain sources, including "major sources."  42 U.S.C. § 7661a(a). Under Title V and regulations promulgated thereunder all "applicable requirements" for

compliance with the CAA, including NESHAP/MACT requirements, are set forth in one operating permit known as a Title V permit.  42 U.S.C. § 7661c(a) and 40 C.F.R. § 70.6(a).

61.     Pursuant to Section 502(b) of the CAA, EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V permit program to be administered by any state or local air pollution control agency and approved by EPA.  57 Fed. Reg. 32,250 (July 21, 1992).  42 U.S.C. § 7661a(b).

62.     Section 113 of the CAA provides that state-issued Title V permits are federally enforceable.  40 U.S.C. § 7413(b)(2).

63.     EPA approved the Title V program of the State of Indiana on November 30, 2001. *See* 40 C.F.R. Part 70, Appendix A.

64.     The CAA, federal Title V regulations, and Indiana Title V regulations provide that no source subject to Title V may operate except in compliance with a Title V permit. 42 U.S.C. § 7661a(a); 40 C.F.R. §§ 70.1(b) and 70.7(b); 326 IAC 2-7-3.

### H.     CAA Enforcement Authorities

65.     Section 113(a) of the CAA, 42 U.S.C. § 7413(a), authorizes EPA to commence a civil action for civil penalties against any person who has violated any requirement or prohibition of the CAA or regulations promulgated thereunder, including NESHAP/MACT regulations, or who has violated any applicable state permit or implementation plan (including the Indiana SIP and Title V permits issued by the State of Indiana).

66.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, to assess a civil penalty, and to award any other appropriate relief for each violation.

67.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and the Debt Collection Improvement Act, 31 U.S.C. § 3701, provides that any person who fails to comply with the CAA, its regulations, applicable SIP, or Title V Permit, shall be subject to civil penalties up to $37,500 per day per violation for violations of the CAA that occurred between January 12, 2009 and November 2, 2015, and up to $102,638 per day per violation for violations that occurred after November 3, 2015 if the penalty is assessed on or after December 23, 2020.  See 40 C.F.R. § 19.4; 85 Fed. Reg. 83,821751 (Dec. 23 13, 2020).

68.     Section 113(e) of the CAA, 42 U.S.C. § 7413(e), provides that penalties shall continue to accrue until the violator establishes that continuous compliance has been achieved.

69.     EPA CAA regulations promulgated pursuant to the CAA, provide, inter alia, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved SIP provision, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the CAA, 42 U.S.C. §7413.  40 C.F.R. § 52.23.

## II.     APPLICABLE STATE LAW AUTHORITIES

70.     IDEM has issued air regulations that incorporate by reference the requirements and prohibitions in NESHAP Subpart A, the HWC MACT, the PC MACT, and Off-Site Waste MACT.  See 326 IAC 20-1-1 (incorporating NESHAP Subpart A); 326 IAC 20-28-1 (incorporating the HWC MACT); 326 IAC 20-27-1 (incorporating the PC MACT); 326 IAC 20-23-1 (incorporating the Off-Site Waste MACT).

71.     Pursuant to Indiana Code §§ 13-13-5-1 and 13-13-5-2, Indiana may seek injunctive relief and civil penalties for the violations alleged herein.  In addition, pursuant to

Indiana Code § 13-30-4-1, IDEM may recover a civil penalty not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

## **GENERAL ALLEGATIONS**

72.     The Facility is located at 3301 S. County Road, in Greencastle, Indiana 46135.

73.     The Facility produces cement for use in the production of concrete and concrete products.

74.     At all relevant times herein, Defendant has been the "owner" and "operator" of the Facility within the meaning of the CAA, NESHAP Subpart A, the HWC MACT, the PC MACT and the Off-Site Waste MACT, federal Title V regulations, Indiana Title V regulations, Indiana Code, Indiana Administrative Code, Indiana SIP, and State of Indiana authorities that incorporate the above-listed federal regulations.  *See, e.g.,* 42 U.S.C. §§ 6924, 6925, 7412(a)(9), 7413(b), 7661a; 40 C.F.R. §§ 63.1-63.4, 63.680 *et seq.* 63.1200 *et seq.* (including definition of "you"), 63.1340 *et seq.*, 70 *et seq.*, 326 IAC 1-2-51; 326 IAC 20-1-1 (incorporating NESHAP Subpart A); IC 13-11-2-151; 326 IAC 20-28-1 (incorporating the HWC MACT); 326 IAC 20-27-1 (incorporating the PC MACT); 326 IAC 20-23-1 (incorporating the Off-Site Waste MACT).

75.     At all relevant times herein, the Facility has emitted "air pollutants" and "regulated pollutants" within the meaning of the CAA and Indiana SIP, including particulate matter (PM) and opacity, and emitted or has had the potential to emit in the aggregate, 10 TPY or more of any HAP or 25 TPY or more of any combination of HAPs within the meaning of Section

112 of the CAA and the Indiana SIP.  *See* 42 U.S.C. §§ 7408, 7410, 7412; 7602(g); 40 C.F.R.
§ 63.2; 326 IAC 1-2-33.5, 326 IAC 1-2-52, 326 IAC 1-2-66; 326 IAC 2-1.1(8).

76.     At all relevant times herein, the Facility has been a "stationary source,"  "major
stationary source," "major source" and "Part 70 Source" within the meaning of the CAA,
NESHAP Subpart A, the HWC MACT, the PC MACT and the Off-Site Waste MACT, federal
Title V regulations, Indiana Title V regulations, Indiana SIP, and the State of Indiana authorities
that incorporate the above-listed federal regulations.  *See, e.g.,* 42 U.S.C. §§ 7412; 7602(z), 7661
and 40 C.F.R. §§ 60.1-60.4, 63.680, 63.1200, 63.1340; 70.2; 326 IAC 20-1-1 (incorporating
NESHAP Subpart A regulations); 326 IAC 20-28-1 (incorporating the HWC MACT); 326 IAC
20-27-1 (incorporating the PC MACT); 326 IAC 20-23-1 (incorporating the Off-Site Waste
MACT); 326 IAC 2-7-1-22, 28, 39 (Indiana Title V regulations).

77.     At all relevant times herein, the Facility has been a "source" and a "facility"
within the meaning of the Indiana SIP.  *See* 326 IAC 5-1-2(1)(A).

78.     At all relevant times herein, the Facility has had a "hazardous waste burning kiln"
within the meaning of the HWC MACT and Indiana regulation that incorporates the HWC
MACT because it includes a rotary kiln (Facility Kiln) which includes associated preheater or
precalciner devices that produce clinker by heating limestone and other materials for subsequent
production of cement for use in commerce, and that at times burns hazardous waste.  *See*
40 C.F.R. §§ 63.1201-1221; 326 IAC 20-28-1 (incorporating the HWC MACT).

79.     The Facility Kiln was constructed before April 20, 2004 and therefore is an
"existing source" under the HWC MACT.  40 C.F.R. § 63.1206(a)(1).

80.     Pursuant to HWC MACT Requirements (40 C.F.R. § 63.1207), Defendant has from time to time conducted CPTs to set OPLs and, in 2009 and November of 2014 submitted enforceable NOCs to IDEM containing the OPLs verified by the latest CPT.

81.     At all relevant times herein, the Facility has had an electrostatic precipitator and baghouse within the meaning of the HWC MACT, 40 C.F.R. § 63.1209(k)(1)(i), (n)(1).

82.     Prior to September 19, 2014, the Facility did not use a PM detection system within the meaning of the HWC MACT, 40 C.F.R. § 63.1206(c)(9).

83.     At all relevant times herein, the Facility Kiln produces "clinker" by heating limestone and other materials for subsequent production of "portland cement" within the meaning of the PC MACT.  40 C.F.R. § 63.1340 *et seq.*

84.     At all relevant times herein, the Facility has been a "portland cement plant" within the meaning of the PC MACT and the Indiana regulation that incorporates the PC MACT because it manufactures portland cement.  *See* 40 C.F.R. §§ 63.1340-1358; 326 IAC 20-27-1 (incorporating the PC MACT).

85.     The Facility was constructed or reconstructed before May 6, 2009 and therefore is an "existing" affected source under the PC MACT, NESHAP Subpart A and State of Indiana authorities that incorporate those federal regulations.  *See* 42 U.S.C. § 7412(10), 7661; 40 C.F.R. §§ 63.2, 63.1340-1358; 326 IAC 20-1-1 (incorporating NESHAP Subpart A); 326 IAC 20-27-1 (incorporating the PC MACT).

86.     At all relevant times herein, the Facility included a clinker belt which is a "conveying system" and "conveying system transfer point" within the meaning of the PC

MACT, and a unit known as 503L1 which is a dust collector system for the "finished product storage bin" within the meaning of the PC MACT.  *See* 40 C.F.R. §§ 63.1341, 63.1345 (2012).

87.     At all relevant times herein, the Facility has been a "plant site" within the meaning of the Off-Site Waste MACT, 40 C.F.R. §§ 63.680-681, because it has consisted of contiguous or adjoining property that is under common control at the Facility, including properties that are separated only by a road or other public right-of-way, owned, leased, or operated by the same entity, parent entity, subsidiary, or any combination thereof.  40 C.F.R. § 63.681.

88.     At all relevant times herein, the Facility has been a "plant site" within the meaning of the Off-Site Waste MACT, and Indiana regulation that incorporates the Off-Site Waste MACT, because it has a waste management operation that receives off-site material and is regulated as a hazardous waste treatment, storage, and disposal facility under RCRA regulations codified at 40 CFR Parts 264 and 265.  *See* 40 C.F.R. § 63.680(a); 326 IAC 20-23-1(incorporating the Off-Site Waste MACT).

89.     At all relevant times herein, the Facility has been an existing affected source subject to the Off-Site Waste MACT requirements because it was constructed or reconstructed before October 13, 1994 and received off-site material for the first time before February 1, 2000. *See* 40 C.F.R. § 63.680(e)(1)(i).

90.     At all relevant times herein, the Facility has had, within the meaning of the Off-Site Waste MACT and Indiana regulation incorporating the Off-Site Waste MACT, process vents associated with waste management units and equipment components and groups of equipment in which (i) each component is a pump, compressor, agitator, pressure relief device,

sampling connection system, open-ended valve or line, valve, connector, or instrumentation system; (ii) the equipment component contains or contacts off-site material having a total HAP concentration equal to or greater than 10 percent by weight; and (iii) the equipment component is intended to operate for 300 hours or more during a calendar year in off-site material service. *See* 40 C.F.R. §§ 63.3, 63.680-81; 326 IAC 20-23-1 (incorporating the Off-Site Waste MACT).

91.     At all relevant times herein, the sources listed in the foregoing Paragraph 90 were "affected sources" and "existing sources" within the meaning of the Off-Site Waste MACT, NESHAP Subpart A, and the Indiana authorities that incorporate those federal regulations. *See* 40 C.F.R. §§ 63.2, 63.680-698; 326 IAC 20-1-1 (incorporating NESHAP Subpart A); 326 IAC 20-23-1 (incorporating the Off-Site Waste MACT).

92.     IDEM has issued Defendant the following permits pursuant to Title V of the CAA, 42 U.S.C. § 7661a (collectively Title V Permits), which were thereafter modified from time to time.

   a.     Permit No. T-133-26830-00002 Effective June 17, 2009 (2009 Title V Permit).

   b.     Permit No. 133-33667-00002 Effective December 22, 2014 (2014 Title V Permit).

93.     The Title V permits described in Paragraphs 92.a-b above incorporate the NESHAP Subpart A, HWC MACT, PC MACT, Off-Site Waste MACT, and Indiana SIP requirements set forth in Paragraphs 17 - 64 above.

94.     On September 11, 2015, September 16, 2016, and March 12, 2018, EPA issued requests for information to Defendant under Section 114 of the CAA, 42 U.S.C. § 7414, in response to which Defendant provided information.

95.     In December of 2013 and May of 2018, EPA and/or IDEM conducted inspections of the Facility.

96.     On September 11, 2015 and May 8, 2017, EPA issued a findings and notices of violation respectively to Defendant that included some but not all of the violations alleged in this Complaint.  The NOV issued on August 10, 2017 included the claim that Defendant violated Indiana SIP opacity requirements alleged in the Fifteenth Claim below.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Opacity Exceedances
### in Violation of the HWC MACT, IAC and 2009 Title V Permit

97.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

98.     From May 12, 2012 through September of 2014, the HWC MACT, IAC and the 2009 Title V Permit prohibited Defendant from discharging from the Facility gases containing opacity greater than 20%.  40 C.F.R. § 63.1220(a)(7)(ii); 326 IAC 20-28; 20009 Title V Permit E.5.2(18).

99.     Information received from Defendant demonstrates that on multiple occasions from May 12, 2013 through September 18, 2014 Defendant exceeded the opacity limit of 20% at the Facility in violation of the HWC MACT, 40 C.F.R. § 63.1220(a)(7)(ii); 326 IAC 20-28; 2009 Title V Permit E.5.2(18).

100.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

101.     As a result of the above-listed violations and pursuant to Indiana Code §13-30-4-1, Defendant is liable for civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## SECOND CLAIM FOR RELIEF

### Deviation from OPL for Maximum Bypass CO
### in Violation of the HWC MACT, IAC and 2014 Title V Permit

102.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

103.     At all relevant times herein, the HWC MACT, IAC and 2014 Title V Permit prohibited Defendant from discharging or causing combustion gases to be emitted into the atmosphere that contain CO in the Facility Kiln by-pass duct in excess of 100 ppmv, over an hourly rolling average, dry basis corrected to 7% $O_2$.  40 C.F.R. § 63.1220(a)(5)(i); 326 IAC 20-28, 2014 Title V Permit E.5.2(18).

104.     Information received from Defendant demonstrates that on multiple occasions from March 1, 2015 and continuing thereafter Defendant discharged and/or caused combustion gases to be emitted into the atmosphere in the Facility Kiln by-pass duct in excess of 100 ppmv, over an hourly rolling average, dry basis corrected to 7% $O_2$ in violation of the HWC MACT, 40 C.F.R. § 63.1220(a)(5)(i); 326 IAC 20-28; 2014 Title V Permit E.5.2(18).

105.     Subject to a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

106.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

107.    As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for injunctive relief and the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

### THIRD CLAIM FOR RELIEF

**Exceedance of Maximum Inlet Temperature OPL at the ESP**
**and Exceedance of Emission Limits**
**in Violation of the HWC MACT, IAC and Title V Permits**

108.    The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

109.    In its 2014 NOC, Defendant established 429º F as its OPL for maximum inlet temperature at the ESP under the HWC MACT and IAC.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1); 326 IAC 20-28.

110.    In its 2009 NOC, Defendant established 426.41º F as its OPL for maximum inlet temperature at the ESP under the HWC MACT and IAC.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1); 326 IAC 20-28.

111.    At all relevant times herein, the HWC MACT, IAC and Title V Permits required Defendant to comply with the OPL for the maximum inlet temperature at the ESP submitted in its most recent NOC.  *See* HWC MACT, 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1); 326 IAC 20-28; Title V Permits E.5.2(6) and (9).

112.    Pursuant to the HWC MACT, failure to comply with the OPL for the maximum ESP inlet temperature constitutes an exceedance of the emission limits for dioxin and furans and semivolatile and low volatility metals.  *See* 40 C.F.R. § 63.1206(c)(1)(iii).

113.    Information received from Defendant demonstrates that on multiple occasions beginning on or before May 6, 2013 and continuing thereafter, Defendant failed to comply with the OPL submitted in its NOCs for the maximum inlet temperature at the ESP in violation of the HWC MACT, 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1);  326 IAC 20-28; Title V Permits E.5.2(6) and (9).

114.    Subject to a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

115.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

116.    As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for injunctive relief and the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## FOURTH CLAIM FOR RELIEF

**Exceedance of Maximum Inlet Temperature OPL at the Baghouse Bypass
and Emission Limits
in Violation of the HWC MACT and Title V Permits**

117.    The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

118.    In its 2014 NOC, Defendant established 450º F as its OPL for maximum inlet temperature at the baghouse bypass pursuant to the HWC MACT and IAC.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1); 326 IAC 20-28.

119.    In its 2009 NOC, Defendant established 421.79º F as its OPL for maximum inlet temperature at the baghouse bypass pursuant to the HWC MACT and IAC.  *See* 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1); 326 IAC 20-28.

120.    At all relevant times herein, the HWC MACT, IAC and Title V Permits required Defendant to comply with the OPL submitted in its most recent NOC for the maximum inlet temperature at the bypass baghouse.  *See* HWC MACT, 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1), 326 IAC 20-28; Title V Permits E.5.2(6) and (9).

121.    Pursuant to the HWC MACT, failure to comply with the OPL for the maximum inlet temperature at the bypass baghouse constitutes an exceedance of the emission limits for dioxin and furans and semivolatile and low volatility metals.  *See* 40 C.F.R. § 63.1206(c)(1)(iii).

122.    Information received from Defendant demonstrates that on multiple occasions beginning on May 6, 2013 and continuing thereafter, Defendant failed to comply with the OPL submitted in its NOCs for the maximum inlet temperature at the bypass baghouse in violation of the HWC MACT, 40 C.F.R. §§ 63.1206(c)(1)(iii), 1209(k)(1)(i), 1209(n)(1), 326 IAC 20-28, and the Title V Permits E.5.2(6) and (9).

123.    Subject to a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

124.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

125.     As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for injunctive relief and the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## FIFTH CLAIM FOR RELIEF

**Deviation from PMDS Response Value OPL
in Violation of the HWC MACT, IAC and 2014 Title V Permits**

126.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

127.     At all relevant times herein, the HWC MACT, IAC and 2014 Title V Permit required Defendant to comply with all OPLs submitted in its NOC.  *See* HWC MACT, 40 C.F.R. § 63.1206(c)(1); 326 IAC 20-28; 2014 Title V Permit E.5.2(6).

128.     Defendant included in its November 2014 NOC for the Facility an OPL for PMDS alarm set point.

129.     Information received from Defendant demonstrates that on March 21, 2015, Defendant failed to comply with the PMDS alarm set point OPL submitted in its NOC in violation of the HWC MACT, 40 C.F.R. § 63.1206(c)(1), 326 IAC 20-28, and the 2014 Title V Permit E.5.2(6).

130.     As a result of the above-listed violation, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

131.     As a result of the above-listed violation and pursuant to Ind. Code §13-30-4-1, Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## SIXTH CLAIM FOR RELIEF

### Failure to Measure Combustion Chamber Temperature
### in Violation of the HWC MACT, IAC, and Title V Permits

132.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

133.     At all relevant times herein the HWC MACT, IAC, and Title V Permits required Defendant to measure the temperature of each combustion chamber at a location that best represents, as practicable, the bulk gas temperature in the combustion zone.  *See* 40 C.F.R. § 63.1209(j)(1); 326 IAC 20-28; Title V Permits E.5.2(9).

134.     Information received from Defendant indicates that from May 6, 2013 and continuing thereafter Defendant did not measure the temperature of the Facility Kiln combustion chamber at a location that best represents, as practicable, the bulk gas temperature in the combustion zone in violation of 40 C.F.R. § 63.1209(j)(1), 326 IAC 20-28, and the Title V Permits E.5.2(9).

135.     Subject to a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

136.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

137.     As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1,

Defendant is liable for injunctive relief and the assessment of civil penalties to the State of

Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

### SEVENTH CLAIM FOR RELIEF

**Failure to Shut Off Hazardous Waste Feed upon OPL Deviation or Emission Exceedance
in Violation of the HWC MACT, IAC, and 2014 Title V Permit**

138.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

139.     At all relevant times herein, the HWC MACT, IAC and 2014 Title V Permit

required Defendant to operate the Facility Kiln with a functioning system that immediately and

automatically cuts off the hazardous waste feed to the kiln when a deviation from an OPL occurs

or an emission limit is exceeded.  *See* 40 C.F.R. § 63.1206(c)(3); 326 IAC 20-28; 2014 Title V

Permit E.5.2(6).

140.     Information received from Defendant demonstrates that on multiple occasions

from November 30, 2013 through August 25, 2014 Defendant failed to immediately and

automatically cut off the hazardous waste feed to the Facility Kiln upon deviation from an OPL

or exceedance of an emission limit in violation of 40 C.F.R. § 63.1206(c), 326 IAC 20-28, and

the 2014 Title V Permit E.5.2(6).

141.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA,

42 U.S.C. § 7413(b), Defendant is liable for the assessment of civil penalties to the United States

up to the amounts set forth in Paragraph 67 above per day for each violation.

142.    As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## EIGHTH CLAIM FOR RELIEF

**Failure to Investigate Emission Exceedances and OPL Deviations
in Violation of the HWC MACT, IAC, and 2014 Title V Permit**

143.    The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

144.    At all relevant times herein, the HWC MACT, IAC, and the 2014 Title V Permits required that for each set of 10 exceedances of an emission standard or deviations with an OPL while hazardous waste remains in the Facility Kiln combustion chamber during a 60-day block period, Defendant must:

a.    within 45 days of the 10th exceedance, complete an investigation of the cause of each exceedance and evaluation of approaches to minimize the frequency, duration, and severity of each exceedance, and revise the SSM Plan as warranted by the evaluation to minimize the frequency, duration, and severity of each exceedance; and record the results of the investigation and evaluation in the operating record, and include a summary of the investigation and evaluation, and any changes to the SSM Plan, in the excess emission report required under the HWC MACT, 40 C.F.R. § 63.10(e)(3). *See* 40 C.F.R. § 63.1206(c)(1)(v); 326 IAC 20-28; 2014 Title V Permit E.5.2(6).

145.    Information received from Defendant indicates that from September 20, 2016 to December 26, 2016 Defendant did not comply with the investigation and recordation requirements for excess emission and OPL deviations set forth in the preceding Paragraph 144 in

violation of the HWC MACT, 40 C.F.R. § 63.1206(c)(1)(v), 326 IAC 20-28, and the 2014

Title V Permit E.5.2(6).

146.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA,

42 U.S.C. § 7413(b), Defendant is liable for the assessment of civil penalties to the United States

up to the amounts set forth in Paragraph 67 above per day for each violation.

147.    As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1,

Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than

the amount set forth in Paragraph 71 per day for each violation.

## NINTH CLAIM FOR RELIEF

### Failure to Submit Emission Exceedance and OPL Deviation Reports in Violation of the HWC MACT, IAC, and 2014 Title V Permit

148.    The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

149.    At all relevant times herein, the HWC MACT, IAC, and 2014 Title V Permit

required Defendant to submit to EPA a written report for each set of ten exceedances of an

emission limit or deviation from an OPL that occurred while hazardous waste was in the

combustion chamber during a 60-day block period.  The reports shall document the exceedances

and the results of investigation and corrective action taken.  *See* § 63.1206(c)(3)(vi), 326 IAC 20-

28, 2014 Title V Permit E.5.2.(6).

150.    Information from Defendant indicates that from September 20, 2016 to December

26, 2016, Defendant did not submit to EPA the information pertaining to emission exceedances

and OPL deviations set forth in the preceding Paragraph 149 in violation of the HWC MACT,

40 C.F.R. § 63.1206(c)(1)(v), 326 IAC 20-28, and the 2014 Title V Permit E.5.2(6).

151.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

152.     As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## TENTH CLAIM FOR RELIEF

### Failure to Document Monthly Monitoring
### in Violation of NESHAP Subpart A, the PC MACT, IAC, and 2009 Title V Permit

153.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

154.     At all relevant times herein, NESHAP Subpart A, the PC MACT, IAC and the 2009 Title V Permit required Defendant to document monthly Method 22 visible emission readings for Unit 503L1 and to comply with the recordkeeping provisions of NESHAP Subpart A, which require that records of all opacity and visible emissions monitoring be maintained for at least five years.  *See* 40 C.F.R. §§ 63.10(b)(2)(viii), 1350(f)(1), 40 C.F.R. § 63.1355(b); 326 IAC 20-1-1 and 20-27, 2009 Title V Permit E.4.1, E.4.2(10), (15).

155.     Information from Defendant indicates that in 2011 and 2012 Defendant failed to document monthly Method 22 visible emission readings for Unit 503L1 in violation of NESHAP Subpart A, 40 C.F.R. § 63.10(b)(2)(viii), the PC MACT, 40 C.F.R. §§ 63.1350(f)(1), 63.1355(b), 326 IAC 20-1-1, 20-27, and the 2009 Title V Permit E.4.1, E.4.2(10), (15).

156.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

157.     As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for injunctive relief and the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

**ELEVENTH CLAIM FOR RELIEF**

**Exceedance of Opacity Limit at Clinker Belt
in Violation of the PC MACT, IAC and 2014 Title V Permit**

158.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

159.     At all relevant times herein, the PC MACT, IAC, and Title V Permits prohibited Defendant from discharging any gases from the Facility's clinker belt that exhibits opacity in excess of 10 percent.  *See* 40 C.F.R. § 63.1345; 326 IAC 20-27, 2014 Title V Permit E.4.1(5).

160.     Information from Defendant indicates that on multiple occasions from April 1, 2017 and continuing thereafter Defendant discharged gases from the Facility's clinker belt that exhibited opacity in excess of 10 percent in violation of the PC MACT, 40 C.F.R. § 63.1345, 326 IAC 20-27, and 2014 Title V Permit E.4.1(5).

161.     Subject to a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

162.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

163.    As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1,

Defendant is liable for injunctive relief and the assessment of civil penalties to the State of

Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## TWELFTH CLAIM FOR RELIEF

**Failure to Record THC Monitor Readings
in Violation of the Off-Site Waste MACT, IAC, and 2009 Title V Permit**

164.    The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

165.    At all relevant times herein, the Off-Site Waste MACT, IAC, and 2009 Title V

Permit required Defendant to either (1) monitor the operation of the carbon adsorption system

with a continuous monitoring system to measure and record the daily average concentration level

of organic compounds including THC in the exhaust gas stream from the control device or at an

interval no greater than 20 percent of the time required to consume the total carbon working

capacity at predetermined interval; or (2) replace the carbon canister or the carbon in the control

device on a regular schedule, and when carbon breakthrough is indicated, immediately replace

either the existing carbon canister with a new carbon canister or fresh carbon. 40 C.F.R.

§ 63.693(d); 326 IAC 20-23; 2009 Title V Permit E.8.2(7) and (10).

166.    Information from Defendant indicates that on January 16, 2011 and March 6,

2011, it failed to record THC monitor readings or to replace the carbon canister or the carbon in

the control device on a regular schedule or when carbon breakthrough is indicated in violation of

the Off-Site Waste MACT, 40 C.F.R. § 63.693(d), 326 IAC 20-23, and the 2009 Title V Permit

E.8.2(7) and (10).

167.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

168.    As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

### THIRTEENTH CLAIM FOR RELIEF

**Failure to Use Correct Calibration Gas in Monitoring Equipment Leaks in Violation of the Off-Site Waste MACT, IAC, and Title V Permits**

169.    The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

170.    At all relevant times herein, the Off-Site Waste MACT, IAC, and Title V Permits required Defendant to monitor affected sources for leaks using Method 21 and utilizing calibration gases at zero air (less than 10 ppmv hydrocarbon in air) and a mixture of methane or n-hexane in air at a concentration of approximately, but less than, 10,000 ppmv.  40 C.F.R. §§ 63.691(b)(1) and (2) (incorporating requirements of 40 C.F.R. §§ 61.241-247, 63.161-182), 40 C.F.R. § 63.694(k); 326 IAC 20-23; Title V Permits E.8.2 (6), (9).

171.    From November 5, 2010 through at least August 11, 2019, Defendant did not calibrate the leak detection instrument before each use on each day using calibration gases at zero air (less than 10 ppmv hydrocarbon in air) and a mixture of methane or n-hexane in air at a concentration of approximately, but less than, 10,000 ppmv in violation of the Off-Site Waste MACT, 40 C.F.R. §§ 63.691(b)(1) and (2), 63.694(k), 326 IAC 20-23; and the Title V Permits E.8.2 (6), (9).

172.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

173.    As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## FOURTEENTH CLAIM FOR RELIEF

**Operation of Equipment with Leaks above 500ppm
in Violation of the Off-Site Waste MACT and 2014 Title V Permit**

174.    The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

175.    At all relevant times herein, the Off-Site Waste MACT, IAC and 2014 Title V Permit required Defendant to operate pressure relief devices in gas/vapor service with an instrument reading of less than 500 ppm above background as detected by Method 21 of 40 C.F.R. Part 60, Appendix A.  40 C.F.R. §63.691(c)(1); 326 IAC 20-23, 2014 Title V Permit E.8.2(6).

176.    Based on an inspection conducted by EPA, beginning on or before May 30, 2018 through June 4, 2018, Defendant failed to operate pressure relief devices in gas/vapor service with an instrument reading of less than 500 ppm above background as detected by Method 21 of 40 C.F.R. Part 60, Appendix A in violation of the Off-Site Waste MACT, 40 C.F.R. § 63.691(c)(1), 326 IAC 20-23, and the 2014 Title V Permit E.8.2(6).

177.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

178.     As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

### FIFTEENTH CLAIM FOR RELIEF

**Exceedance of Opacity Limit
In Violation of the Indiana SIP and Title V Permits**

179.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by reference as if fully set forth herein.

180.     At all relevant times herein, the Indiana SIP and Title V Permits prohibited Defendant from discharging gases from the Facility exceeding an average of 40% opacity in any one six-minute average.  326 IAC 5-1-2; Title V Permits C.2.

181.     Information from Defendant indicates that on multiple occasions from June 4, 2012 and continuing thereafter Defendant discharged gases from the Facility exceeding an average of 40% opacity over a six-minute average in violation of the Indiana SIP, 326 IAC 5-1-2 and Title V Permits C.2.

182.     Subject to a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

183.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 67 above per day for each violation.

184.     As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1,

Defendant is liable for injunctive relief and the assessment of civil penalties to the State of

Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## SIXTEENTH CLAIM FOR RELIEF

### Dilution of Carbon Canister Exhaust at THC Monitor
### in Violation of NESHAP Subpart A, IAC, and 2009 Title V Permit

185.     The allegations in Paragraphs 1-96 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

186.     At all relevant times herein, NESHAP Subpart A, IAC and the 2009 Title V

Permit prohibited Defendant from using any equipment to circumvent an emission standard by

any method, including using diluents to achieve compliance with a concentration limit on a

pollutant discharged to the atmosphere.  40 C.F.R. § 63.4(b)(1); 326 IAC 20-1; 2009 Title V

Permit E.4.1, E.5.1, E.8.1.

187.     Information from Defendant indicates that on or before December 17, 2013 and

continuing through December 17, 2013 Defendant diluted the exhaust gas at the carbon canister

outlets to the atmosphere by allowing a valve to be open, which diluted the THC monitor reading

at the carbon canister outlets to the atmosphere in violation of 40 C.F.R. § 63.4(b)(1), 326 IAC

20-1, and the 2009 Title V Permit E.4.1, E.5.1, E.8.1.

188.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA,

42 U.S.C. § 7413(b), Defendant is liable for the assessment of civil penalties to the United States

up to the amounts set forth in Paragraph 67 above per day for each violation.

189.     As a result of the above-listed violations and pursuant to Ind. Code §13-30-4-1, Defendant is liable for the assessment of civil penalties to the State of Indiana of not more than the amount set forth in Paragraph 71 per day for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A.     Assess against Defendant a civil penalty, and enter judgment against Defendant and in favor of the United States, in an amount up to $37,500 per day per violation for violations of the CAA that occurred between January 12, 2009 and November 2, 2015, and $102,638 per day per violation for violations that occurred after November 2, 2015.

B.     Award the United States injunctive relief pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) including mitigation of excess emissions;

C.     Award to the State of Indiana and enter judgment against Defendant and in favor of the State, in an amount up to $25,000 per day per violation, and injunctive relief pursuant to Ind. Code § 13-30-5-1 and 13-30-5-2.

D.     Grant such other relief as this Court may deem just and proper.


Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/ Elizabeth L. Loeb
ELIZABETH L. LOEB
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources

Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8916

JOHN E. CHILDRESS
Acting United States Attorney

<u>/s/ Shelese Woods</u>
Shelese Woods
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204
317-226-6333
shelese.woods@usdoj.gov

FOR THE STATE OF INDIANA

THEODORE E. ROKITA
Attorney General of Indiana

/s/ Aleksandrina P. Pratt
ALEKSANDRINA P. PRATT
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington Street, IGCS 5th Floor
Indianapolis, IN 46204