**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| | ) | |
| THE STATE OF INDIANA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil No. 2:21-cv-233-JRS-MJD |
| LONE STAR INDUSTRIES, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT DECREE

WHEREAS, Plaintiff, the United States of America (United States), by the authority of the Attorney General of the United States, acting at the request and on behalf of the United States Environmental Protection Agency (EPA), and the State of Indiana (the State), by authority of the Indiana Attorney General acting at the request and on behalf of the Indiana Department of Environmental Management (IDEM) have simultaneously filed a complaint under the Clean Air Act (CAA), 42 U.S.C. § 7401 *et seq*. (the Complaint), and lodged this Consent Decree against Lone Star Industries (Lone Star or Defendant), Inc., for alleged violations of the CAA at a cement manufacturing facility Defendant owns and operates in Greencastle, Indiana (the Greencastle Facility).

WHEREAS the Complaint alleges that at certain times Defendant's operations of the Greencastle Facility violated certain provisions in the following CAA requirements:

- The Maximum Achievable Control Technology standards (MACTs) for Hazardous Waste Combustors (HWCs) promulgated by EPA within the National Emission

1

Standards for Hazardous Air Pollutants (NESHAPs) pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart EEE (40 C.F.R. §§ 63.1200-1221);

- NESHAP/MACT for the Portland Cement Manufacturing Industry, promulgated by EPA pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart LLL (40 C.F.R. §§ 63.1340-1359);

- NESHAP/MACT for Off-Site Waste and Recovery Operations, promulgated by EPA and IDEM pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart DD (40 C.F.R. §§63.680-698);

- NESHAP/MACT General Provisions, promulgated by EPA pursuant to Section 112 of the CAA and codified at 40 C.F.R. Part 63 Subpart A (40 C.F.R. §§ 63.1-16);

- The federally enforceable State Implementation Plan of the State of Indiana (Indiana SIP), Title 326 of the Indiana Administrative Code (IAC) Article 5 (326 IAC 5); and

- The federally enforceable operating permits issued to the Greencastle Facility pursuant to Title V of the CAA, 42 U.S.C. §§ 7661, and 326 IAC 2-1 (Permit Nos. T-133-33667-0002 and T-133-26830-0002) that incorporate the above-listed NESHAP/MACT and SIP requirements.

WHEREAS the Defendant does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between them and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

2.    Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a).  Defendant consents to the personal jurisdiction of this Court and waives any objections to venue in this District.

3.      For purposes of this Consent Decree, Defendant agrees that the Complaint states

claims upon which relief may be granted pursuant to Sections 113 of the CAA, 42 U.S.C. § 7413

and Title 13 of the Indiana Code and Title 326 of the Indiana Administrative Code.

## II.      APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United

States and the State, and upon Defendant and any successors, assigns, or other entities or persons

otherwise bound by law.

5.      No transfer of ownership or operation of the Greencastle Facility, or a portion of

the Facility that is subject to this Consent Decree, whether in compliance with the procedures of

this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of

the Decree are implemented, unless (1) the transferee agrees to undertake the obligations

required by this Decree and to be substituted for the Defendant as a Party under the Decree and

thus be bound by the terms thereof, and (2) the United States, after consultation with the State,

consents to relieve Defendant of its obligations and substitute the transferee and the Court

approves a modification effectuating the substitution.

a.      At least thirty (30) Days prior to such transfer, Defendant shall provide a

copy of this Consent Decree to the proposed transferee and provide written notice (as further

described later in this Paragraph) of the prospective transfer, together with a copy of all portions

of the proposed written transfer agreement between Defendant and the prospective transferee

related to compliance under federal and state environmental laws, permits, and this Consent

Decree, to EPA Region 5, and the United States Department of Justice, in accordance with

Section XV (Notices).  The written notice shall describe the nature and extent of the transfer.  If

the Defendant intends to ask to be relieved of some or all obligations under this Decree and

substitute the transferee in the Consent Decree for such obligations, the written notice shall so

indicate, and shall identify the relevant obligations.  Information in support of the request for

relief from obligations under this Decree shall be included in the written notice if available at

that time.  If the information in support of the request for relief is not available at that time, it

shall be provided in writing within thirty (30) Days after completion of the transfer, but no

substitution of the transferee for Defendant under this Consent Decree shall occur until such

information has been provided.

      b.      Once Defendant has provided all information in support of the request, the

United States may agree to modify this Consent Decree to relieve Defendant of some or all of its

obligations under this Consent Decree and substitute the transferee as the responsible person for

such obligations.  If the United States so agrees, it shall then file motion to modify the Consent

Decree accordingly with the Court pursuant to Section XVIII.  The substitution of the transferee

for Defendant shall not be effective unless and until the modification is approved by the Court.

      c.      The United States' decision to refuse to approve the substitution of the

transferee for the Defendant shall not be subject to judicial review.  The United States may

refuse to approve the substitution of the transferee for Defendant if it determines that the

proposed transferee does not possess the requisite financial and technical ability to assume the

Consent Decree's obligations.

      d.      Any attempt to transfer ownership or operation of the Facility or any

portion of the Greencastle Facility that is subject to this Consent Decree without complying with

this Paragraph constitutes a violation of this Decree.

      6.      Defendant shall provide a copy of this Consent Decree, or relevant parts, to all

officers, managers, Kiln operators, and agents who are responsible for or will direct activities

related to compliance with any provision of this Decree, as well as to any contractor retained to

perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the applicable provisions of this Consent Decree.

7.    In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.    DEFINITIONS

8.    Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated pursuant to the CAA have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.    "Clinker" means the product of the process in which limestone and other materials are heated in the kiln which is then ground with gypsum and other materials to form cement.

b.    "Complaint" means the complaint filed by the United States and the State in this action.

c.    "Consent Decree" or "Decree" means this Decree and all appendices attached hereto listed in Section XXV.

d.    "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

e.    "Date of Lodging" means the date that this Consent Decree is first filed with the Court pursuant to Section XX (Public Participation) of this Consent Decree.

f.      "Defendant" means Lone Star Industries, Inc.

g.      "DOJ" means the United States Department of Justice and any of its

successor departments or agencies.

h.      "EPA" means the United States Environmental Protection Agency and any

of its successor departments or agencies.

i.      "Effective Date" means the definition provided in Section XVI.

j.      "Electrostatic Precipitator" or "ESP" means the filter that uses

electrostatically charged fields to impart charges onto particles in an exhaust stream and then

collects those particles on oppositely charged plates to remove them from the exhaust at the

Greencastle Facility.

k.      "Energize" when used in Paragraph 15 of this Consent Decree, means to

supply electrical power to the ESP at some level.

l.      "Facility" or "Greencastle Facility" means the cement manufacturing

plant, including all related equipment and real property including all equipment covered by the

Title V Permit, located at 3301 South County Road 150 West, in Greencastle, Indiana 46135.

m.      "Hazardous Waste Combustor MACT" or "HWC MACT" means the

regulations promulgated by EPA as part of the NESHAP/MACT for Hazardous Waste

Combustors that are applicable to the Greencastle Facility, currently codified at 40 C.F.R. Part

63, Subpart EEE (40 C.F.R. §§ 63.1200 et seq.), including any revisions and modifications

thereto, and any successor provisions that EPA promulgates to replace the current HWC MACT.

n.      "HWC MACT Exceedance" occurs when (1) an emission at the

Greencastle Facility exceeds an emission standard applicable to the Facility in 40 C.F.R. §

63.1220; or (2) an operating parameter limit (OPL) established during the most recent compliant

performance test and identified in the most recent Notification of Compliance submitted to

IDEM for the Greencastle Facility pursuant to 40 C.F.R. §§ 63.1207(j) and 63.1207(d), that is

required to be continuously measured and recorded by 40 C.F.R. § 63.1209 of the HWC MACT

is above the maximum limit or below the minimum limit.  A HWC MACT Exceedance does not

include emissions exceedances and OPL deviations exempted under 40 C.F.R. § 63.1206(b)(1).

   o. "IDEM" means the Indiana Department of Environmental Management

and any successor agencies.

   p. "Indiana SIP" or "SIP" means the Indiana state implementation plan

approved and enforceable by EPA under Section 110 of the CAA.

   q. "Indiana SIP Opacity Requirements" means all provisions in the Indiana

SIP that limit opacity or set forth compliance determination, monitoring, recordkeeping and

reporting requirements relating to opacity from the Greencastle Facility.

   r. "Interest" means interest calculated at the rate set forth in 28 U.S.C.

§ 1961.

   s. "Kiln" as used in this Consent Decree shall mean any device at the

Greencastle Facility that heats limestone and other materials for subsequent production of

cement including associated preheater or precalciner devices, inline raw mills, inline coal mills

or alkali bypasses.  As of the Date of Lodging, the Kiln includes Units 440G, 440PH, 401B, and

3-5B, as listed in the Greencastle Facility's Title V Permit.

   t. "Kiln Feed" means the slurry that is introduced to the Kiln that becomes

Clinker in the presence of the Kiln's extreme heat.

   u. "Kiln Start-Up" begins when a shutdown kiln turns on the induced draft

fan and begins firing fuel in the main burner and ends upon the earlier of (1) feed being

continuously introduced into the Kiln for at least 120 minutes; or (2) when the feed rate exceeds 75% of the Kiln design limitation rate.

v.      "Offsite Waste Operations MACT" means the regulations promulgated by EPA as part of the NESHAP/MACT for Off-Site Waste and Recovery Operations that are applicable to the Greencastle Facility, currently codified at 40 C.F.R. Part 63 Subpart DD (40 C.F.R. 63.680 et seq.), including any revisions and modifications thereto, and any successor provisions that replace the current Offsite Waste Operations MACT.

w.      "OPL(s)" means an operating parameter limit(s) at the Facility that has established or will be established pursuant to the HWC MACT, as documented in the most recent Notice of Compliance submitted to IDEM, and as it may be modified or updated from time to time during the term of this Consent Decree.

x.      "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral, including subparagraphs thereof (Subparagraph) identified by lower case English letters, small Roman numerals, and all of the above listed indicators in parentheses.

y.       "Parties" means the United States, the State, and Defendant.

z.      "PM" means particulate matter.

aa.     "Portland Cement MACT" means the regulations promulgated by EPA as part of the NESHAP/MACT for the Portland Cement Manufacturing Industry that are applicable to the Greencastle Facility, currently codified at 40 C.F.R. Part 63 Subpart LLL (40 C.F.R. 63.1340 et seq.), including any revisions and modifications thereto, and any successor provisions that replace the current Portland Cement MACT.

bb.     "Section" means a portion of this Decree identified by a Roman numeral.

cc.     "State" means the State of Indiana, including but not limited to the Indiana

8

Department of Environmental Management and the Indiana Attorney General.

        dd.    "Title V Permit" means the operating permit applicable to Defendant and issued by IDEM for the Greencastle Facility pursuant to Title V of the CAA, 42 U.S.C. §§ 7661-7661e, and 326 IAC 2-1 including revisions and modifications thereto, or any newly issued permit that replaces or modifies the Title V Permit in effect as of the Date of Lodging.

        ee.    "United States" means the United States of America, including DOJ acting on behalf of EPA.

## IV.   <u>CIVIL PENALTY</u>

    9.    Within thirty (30) Days after the Effective Date, Defendant shall pay the United States and the State a civil penalty of Seven Hundred and Twenty Nine Thousand Dollars ($729,000).

    10.    Defendant shall pay a civil penalty of $364,500 to the United States together with Interest accruing from July 27, 2020, at the rate specified in 28 U.S.C. § 1961 as of July 27, 2020.  The civil penalty to the United States shall be paid by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing DOJ Case Number 90-5-2-1-09889/4 and the civil action case name and case number of this action.  The costs of such EFT shall be Defendant's responsibility.  Payment shall be made in accordance with timely instructions provided to the following representative of Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of Indiana.

        Daniel B. Nugent
        Senior Vice President, Technical Services
        and Government Affairs
        Lone Star Industries, Inc. d/b/a/Buzzi Unicem USA
        100 Brodhead Road
        Bethlehem PA 18017
        Email:  daniel.nugent@buzziunicemusa.com

Defendant may change the individual to receive payment instructions on its behalf by providing

written notice of such change to DOJ and EPA in accordance with Section XV (Notices).

Any funds received after 2:00 p.m. EDT shall be credited on the next business day.  At the time

of payment, Defendant shall provide notice of payment, referencing the USAO File Number, the

DOJ Case Number, and the civil action case name and case number, to the Department of Justice

and to EPA in accordance with Section XV (Notices) of this Consent Decree.

        a.      Defendant shall pay a civil penalty of $364,500 to the State with Interest

accruing from July 27, 2020, at the rate specified in 28 U.S.C. § 1961 as of July 27, 2020 within

thirty (30) Days after the Date of Entry.  Payment shall be wired through an EFT to the State to

be deposited to the Environmental Management Special Fund pursuant to IC 13-14-12-1. To

receive wire instructions, Defendant shall call or email the following point of contact:

> Robin Champion
> Accounts Receivable Manager
> Indiana Department of Environmental Management
> Phone: 317-233-2394
> Email: RChampio@idem.IN.gov

Defendant shall also notify the same point of contact within ten (10) Days after the transfer

occurs to confirm receipt.  Defendant's payment to the State shall be due within thirty (30) days

of the Date of Entry of this Consent Decree, or twenty (20) days from the date Defendant

receives the State's wire transfer instructions, whichever occurs later.

        11.      At the time of payment, Defendant shall send notice that payment has been made:

(i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail to the EPA

Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to

DOJ via email or regular mail in accordance with Section XV (Notices); and (iii) to IDEM in

accordance with Section XV (Notices).  Such notice shall state that the payment is for the civil

penalty owed pursuant to the Consent Decree in *United States et al. v. Lone Star Indus.* and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-09889/4.

12.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal or state income tax.

## V.     COMPLIANCE REQUIREMENTS

13.     Defendant shall comply with the following federal and state laws, regulations and permit provisions applicable to the Greencastle Facility.

a.     The HWC MACT, 40 C.F.R. §§ 63.1206(a)(1), 1206 (b)(1)-(8), (10)-(13), (15), 1206(c), 1209, 1210, 1211, 1220, and Table 1;

b.     The PC MACT, 40, C.F.R. §§ 63.1342, 1343, 1345, 1347, 1348, 1350, 1354, 1355, and Table 1;

c.     The Off-Site Waste MACT, 40 C.F.R. §§ 63.683, 691, 693, 694(k), 695, 696, and 697;

d.     General MACT Subpart A, 40 C.F.R. §§ 63.4, 63.6, 63.8, 63.10, and 63.11;

e.     SIP Opacity provisions and limits currently codified at 326 IAC 5-1; and

f.     All provisions in Defendant's Title V Permit that incorporates requirements in the authorities listed in Paragraph 13.a-e above.

14.     <u>Kiln PM Control Measures</u>.  Defendant shall install and implement the following Kiln PM control measures at the Greencastle Facility.

a.     <u>MicroRap Rapper Control</u>.  By no later than July 1, 2020, Defendant shall install a microprocessor-based rapping system for the ESP that provides increased flexibility in programming the rapper system and is integrated into the ESP control system.  This system shall be directly connected into the Greencastle Facility's Performance Optimization System and shall

include the ability for remote programming.  Defendant shall operate this system as necessary to maintain compliance with the HWC MACT and Indiana SIP Opacity Requirements.

        b.    <u>Micro Voltage Control 4 System</u>.  By no later than July 1, 2020, Defendant shall install a system on the ESP that enables the operator to adjust operating parameters quickly and accurately to changing conditions in the ESP, provides more precise information about Transformer Rectifier (T/R) set operation, and allows the operators to more quickly identify and address conditions that may be causing reduced ESP performance. Defendant shall maintain this system so that it is continuously available to Kiln operators.

        c.    <u>ESP Data Logging, Diagnostic, and Troubleshooting Functions</u>.  By no later than July 1, 2020, Defendant shall install and thereafter operate a system that:

        (1)    has continuously available ESP performance modelling capable of determining relative efficiency of ESP lanes based on live operating data,

        (2)    has continuously available an outage map display that can pinpoint problem sections in the ESP that are contributing the most to opacity issues; and

        (3)    continuously operates with data logging at 5 second intervals for all ESP control and process data.

        d.    <u>Continuous ESP Performance Analysis and Optimization</u>.  By no later than July 1, 2020, Defendant shall install and continuously operate all of the following system modules on the ESP.

        (1)    a performance optimization module that adjusts voltage control levels to achieve the most efficient powering of the precipitator at

the lowest level of emissions;

(2)     a power off rapping module that allows scheduling of reduced power rapping events with configurable opacity and load thresholds;

(3)     a rapping optimization module that selects the most appropriate rapping sequence based on configurable load, opacity, time of day, or other process settings;

(4)     a start-up/shut-down module that automates the process of bringing the precipitator in or out of service based on configurable set-points such as O2 levels or load; and

(5)     a T/R auto adjust module that adjusts specific voltage control set points to allow the precipitator to react to variable process conditions.

e.     <u>Rigid Discharge Electrodes (RDE) Replacement</u>.  By no later than April 30, 2021, Defendant shall replace all two-piece RDEs with one-piece "rigid" RDEs throughout the ESP.

f.     <u>Replacement of Kiln $O_2$ Analyzer</u>.  By no later than April 30, 2021, Defendant shall replace the current Siemens Oxymat 6 model $O_2$ analyzer with an Emerson Rosemont CT5100 model $O_2$ analyzer on the Kiln that will provide kiln operators with real-time data on relative oxygen concentrations present in the gas exiting the Kiln thereby enabling the operators to minimize Kiln gas chemical reducing conditions that can lead to the formation of rings and buildups in the Kiln burning zone.

15.     <u>Revised Kiln Start-Up Procedures</u>.

a.      No later than sixty (60) Days following the Date of Lodging, Defendant shall revise the Greencastle Facility's Startup, Shutdown, and Malfunction Plan (SSM Plan) under 40 C.F.R. § 63.6(e)(3) to: (1) incorporate the definition of Kiln Start-Up contained in Section III; and (2) incorporate the Kiln Start-Up procedures set forth in Paragraph 15.b below. Defendant shall thereafter comply with the revised SSM Plan, as it may be modified and/or amended in accordance with applicable law, including 40 C.F.R. §63.6(e)(3)(viii).

b.      Beginning on November 1, 2020, during each Kiln Start-Up, Defendant shall: (1) de-Energize Fields 1 and 2 of the ESP while preheating the Kiln with fuel oil to prevent soot buildup on the collection plates; (2) Energize ESP Fields 1 and 2 approximately one hour prior to Kiln Feed being introduced; (3) reduce the ESP induced draft fan speed to no more than 730 rpm prior to first introducing Kiln Feed; and (4) use automated control of the crusher/dryer water spray on a feedback loop to maintain ESP inlet temperature below the applicable OPL before Kiln Feed is introduced.

c.      If there are more than ten (10) Days of exceedances of the ESP air pollution control device 1-hour rolling average maximum inlet temperature or ten (10) Days of the 6-hour rolling average PMDS alarm set-point associated with Kiln Start-Up during any rolling 12-month period, within sixty (60) Days of the last exceedance, Defendant shall hire a consultant who shall evaluate whether there are corrective measures, including but not limited to adjustments that could be made to Kiln Start-Up procedures, that could reduce air pollution control device maximum inlet temperature or the PMDS alarm set-point exceedances.

16.    Hot Clinker Belt Measures.

a.      Beginning no later than October 1, 2020, Defendant shall continuously use the following control measures on and/or at the hot clinker belt (Unit No. 412V) at the

14

Greencastle Facility when the hot clinker belt is in operation and discharging outside.

      (1)     a stacker chute;

      (2)     a 33' by 30' enclosure;

      (3)     a water spray system or dust collector; and

      (4)     a settling curtain.

In the event Defendant installs one or more dust collectors to control particulate from the hot clinker belt (Unit No. 412V), Defendant has the option to use the dust collector(s) or water spray or both.

      b.     By no later than October 1, 2021, Defendant shall evaluate the efficacy of the control measures set forth in Paragraph 16.a(1)-(4) above in reducing opacity from the hot clinker belt and submit a report of the evaluation to EPA and the State for comment.  If Defendant reasonably concludes that the measures have significantly reduced opacity from the hot clinker belt, Defendant shall continue to operate them.  If the above-listed control measures have not significantly reduced opacity exceedance instances (by 80% or more) from the hot clinker belt, then no later than December 1, 2021, Defendant shall submit to EPA and IDEM for approval pursuant to Section VII (Comment and Approval of Submissions) below, a plan that identifies additional measures it will undertake to reduce opacity from the hot clinker belt and a schedule for implementing such measures, and shall implement the EPA/IDEM-approved plan as provided in Paragraph 31 below.

      17.     <u>Flow/No Flow Indicator to Supplement the HWF Flow Meter</u>.  By no later than July 1, 2020, Defendant shall continuously operate a Flow/No Flow indicator that monitors the position of the valves that cut off the flow of hazardous waste to the Kiln, as corroboration that hazardous waste is not flowing to the Kiln combustion chamber.

18.    <u>Compliance with HWC MACT CO Limit</u>.  Beginning on January 1, 2021, Defendant shall comply with the following measures specified in subparagraphs 18.a-d below if CO measured at the Kiln bypass discharge exceeds 100 parts per million by volume (ppmv) over an hourly rolling average (monitored continuously with a continuous emissions monitoring system (CEMS)), dry basis and corrected to 7% oxygen ($O_2$) more than 15 instances in any 6 month rolling period while hazardous waste fuels are in the combustion chamber.

a.    Retain a third party independent consultant within forty-five (45) Days.

b.    The retained consultant shall within ninety (90) Days of such retention, complete a study to identify the root causes of the non-compliance and additional measures and/or protocols (including alternative compliance demonstration approaches) that can be deployed at the Greencastle Facility to reduce the frequency of CO exceedances.

c.    No later than ninety (90) Days after retention of the consultant, Defendant shall submit to EPA and IDEM the consultant's proposal for approval pursuant to Section VII (Comment and Approval of Submissions) below.

d.    Upon EPA and IDEM approval, Defendant shall implement the consultant's proposal as provided in Paragraph 31 below.

19.    <u>Compliance with Facility Opacity Limit</u>.  Beginning with the 12-month period ending on December 31, 2020, no later than the fifth day of each calendar month, Defendant shall determine the percentage of operating time in excess of the applicable SIP opacity limit set forth in the Indiana SIP (326-5-1) at the Kiln stack during the preceding 12 calendar months (not including any days in the current month).  If Defendant exceeds the opacity limit more than

0.350% of the Kiln's operating time in a 12-month period, it shall then implement the following measures.

      a.      Retain a third party independent consultant within forty-five (45) Days.

      b.      Within sixty (60) Days of retention, Defendant shall ensure that its consultant develops a scope of work and schedule for performance of the evaluation required hereunder and submit such scope and schedule to EPA for comment pursuant to Section VII (Comment and Approval of Submissions).

      c.      In accordance with the deadline set forth in Paragraph 31 below, Defendant shall ensure that its consultant implements the evaluation and completes a report that identifies the root causes of the non-compliance and proposes additional measures and/or protocols that can be deployed at the Greencastle Facility to reduce the frequency of opacity exceedances.

      d.      Within forty-five (45) Days of its consultant's completion of the report and proposal in Paragraph 19.c above, Defendant shall submit to EPA and IDEM the consultant's report and proposal, along with Defendant's plan and schedule for implementation of the measures contained in the consultant's proposal for approval pursuant to Section VII (Comment and Approval of Submissions) below.

      e.      Upon EPA and IDEM approval, Defendant shall implement the consultant's proposal as provided in Paragraph 31 below.

20.    <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section X (Force Majeure) for any delay in

the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and administratively complete applications and has taken all other actions reasonably necessary to support issuance of all such permits or approvals.

## VI.     <u>ADDITIONAL INJUNCTIVE RELIEF</u>

21.     Defendant shall implement the following Environmental Mitigation Projects at the Greencastle Facility more specifically described in Appendix A hereto:  (a) dust collector projects (2); and (b) road paving (4 areas).

22.     Defendant shall maintain, and present to EPA and IDEM upon request, all documents reasonably necessary to substantiate the completion of the Mitigation Projects described in Appendix A and shall provide these documents to EPA and IDEM within thirty (30) Days following a request for the documents.

23.     All reports prepared by Defendant pursuant to the requirements of this Section of the Consent Decree and required to be submitted to EPA and IDEM shall be publicly available from Defendant without charge in paper or electronic format.

24.     Defendant shall certify, as part of each report submitted to EPA and IDEM for the Project,

      a.     that, as of the Date Defendant executed this Decree, Defendant is not required to perform or develop the Mitigation Projects by any federal, state, or local law or regulation and is not required to perform or develop the Mitigation Projects by agreement, grant, or as injunctive relief awarded in any other action in any forum;

      b.     that the Mitigation Projects were not projects that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

18

c.      that Defendant has not received and will not receive credit for the Mitigation Projects in any other enforcement action; and

d.      that Defendant shall not use any pollutant reductions from the Mitigation Projects as netting reductions, pollutant offsets, or to apply for, obtain, trade, or sell any pollutant reduction credits.

25.      Defendant shall use good faith efforts to secure as much environmental benefit as possible for the implemented Mitigation Projects, consistent with the applicable requirements and limits of this Consent Decree.

26.      Beginning with the first semi-annual report due under Paragraph 32 and continuing until completion of the Mitigation Projects, Defendant shall provide EPA and IDEM with updates concerning the progress of the Mitigation Projects in the semi-annual reports it submits pursuant to Section VIII below (Reporting Requirements).

**VII.      EPA AND IDEM REVIEW, COMMENT AND APPROVAL OF SUBMISSIONS**

27.      Where any provision of this Consent Decree specifically requires the submission of a plan, notification, report, procedure, protocol, or other deliverable (hereinafter referred to as a submission) by Defendant to be subject to EPA and IDEM approval or subject to EPA and IDEM comment, or where any provision of this Consent Decree specifically references this Section VII, the submission shall be subject to the provisions of this Section.

28.      For each submission subject to this Section VII, Defendant shall submit one copy of the submission to the EPA and IDEM addressee listed in Section XV (Notices) along with any underlying data, documents or other information that this Decree requires accompany the submission in a widely-recognized electronic format (such as .pdf or Microsoft® Excel).

29.      Submissions Subject to EPA and IDEM Approval.

a.      Unless otherwise provided herein, for submissions subject to EPA and

19

IDEM approval, EPA and IDEM may approve the submission or decline to approve it, in whole or in part, and may provide written comments.

b.      Unless otherwise provided herein, if EPA and IDEM disapprove a submission, in whole or in part, they shall state in writing the basis for such disapproval.

c.      Unless otherwise provided herein, upon receiving EPA's written comments or written notice that EPA and IDEM disapproves a submission, in whole or in part, Defendant shall have forty-five (45) Days (or such other time frame approved by EPA or IDEM, as the case may be) to:  (1) alter the submission consistent with EPA's written comments or notice of disapproval and provide the submission to EPA and IDEM for final approval, or (2) to invoke Dispute Resolution under Section XI.

d.      If EPA or IDEM, as the case may be, fails to approve or disapprove a submission in writing within ninety (90) Days of the submission, Defendant may invoke Dispute Resolution under Section XI for EPA's or IDEM's failure to act on the submission.

30.    <u>Submissions Subject to EPA and IDEM Comment</u>.

a.      Unless otherwise provided herein, for submissions under any provision of this Consent Decree that are subject to EPA and IDEM comment, EPA and IDEM may provide written comments on the submission, in whole or in part, or may decline to comment.  If EPA and IDEM provides written comments within ninety (90) Days of receiving a submission, Defendant shall within forty-five (45) Days of receiving such comments either:  (1) alter and implement the submission consistent with EPA's written comments and re-submit the submission to EPA, or (2) submit the matter for Dispute Resolution under Section XI.

b.      EPA may provide written comments requiring changes to the submission after ninety (90) Days of receiving the submission in which case Defendant shall implement the

comments within sixty (60) Days of receiving EPA's comments unless it would be unduly burdensome to do so given the degree to which Defendant has proceeded with implementing the submission or otherwise unreasonable.  If Defendant determines that implementation of the written comments is unduly burdensome or otherwise unreasonable, it may invoke Dispute Resolution under Section XI within sixty (60) Days of receiving EPA and IDEM comments.

31.    <u>Implementation of Plans, Limits, or Other Measures Pursuant to Submissions Subject to EPA and IDEM Comment or Approval</u>.  Unless otherwise provided for herein, upon receipt of EPA's or IDEM's final approval of, or comments on, a submission, or upon the expiration of ninety (90) Days from the date of a submission subject to EPA and IDEM comment (not approval) or upon completion of any Dispute Resolution process under Section XI regarding a submission, Defendant shall implement the submission in accordance with the requirements and schedule within the submission as approved by, or commented on by EPA or IDEM, or as submitted if ninety (90) Days have passed since the submission with no EPA or IDEM comments received, or as altered through the Dispute Resolution process under Section XI. Nothing herein shall prevent Defendant from implementing a submission earlier subject to change to incorporate EPA and IDEM comments as provided for herein.

## VIII.   REPORTING REQUIREMENTS

32.    Defendant shall submit the following reports to EPA and IDEM at the addresses set forth Section XV (Notices):

a.    By July 31st and January 31st of each year after the Date of Lodging of this Consent Decree until termination of this Decree pursuant to Section XIX, Defendant shall submit a semi-annual report containing the following information for the six (6) month period from January 1 through June 30, and July 1 through December 31 respectively:

(1)    descriptions of the status of the construction and operation of the

compliance measures in Section V (Compliance Requirements) including the completion of milestones, problems encountered or anticipated, together with implemented or proposed solutions;

(2)    the status of permit applications that pertain to any requirements in this Consent Decree;

(3)    the status of the construction of the projects required under Section VI (Additional Injunctive Relief) including the completion of milestones, problems encountered or anticipated, together with implemented or proposed solutions;

(4)    Any changes made to the SSM Plan since the last semi-annual report; and

(5)    Copies of the semi-annual reports and excess emission reports submitted to IDEM under the Greencastle Facility's Title V Permit.

The first semi-annual report shall be due on July 31, 2021.

b.    The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

33.    If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify DOJ, EPA and IDEM of such violation and its likely duration, in writing, within ten (10) business Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation

cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section X (Force Majeure).

34.    Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and IDEM by email to the notice recipients listed in Section XV (Notices) as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

35.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

36.    This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

37.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

38.    Any information provided pursuant to this Consent Decree may be used by the United States and the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.    STIPULATED PENALTIES

39.    Defendant shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.  Unless otherwise noted below, stipulated penalties shall accrue per violation per day; provided, however, that a continuous violation of the same parameter over multiple averaging periods during a single day (for example, an exceedance of a SIP opacity limit for 3 consecutive 6 min. periods) shall be considered a single event or violation, and not three separate violations.  The number of Days of a particular violation is calculated as the total Days on which a violation occurred but shall reset to Day 1 if compliance is achieved between violations and Defendant demonstrates that the violations are not due to the same cause.  For example, in the case of a violation that occurs for 34 Days, ceases for several Days and then resumes due to a different cause, the stipulated penalty for the first Day on which the violation resumes shall be calculated as Day 1 of the violation.

40.    <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $2,000 per Day for each Day that the payment is late.

41.    <u>Compliance Requirements</u>.  Defendant shall be liable for the penalties in the amounts set forth below for the following violations of Section V (Compliance Requirements) of this Consent Decree, except for violations of recordkeeping and reporting requirements which are subject to stipulated penalties in Paragraph 43 below.

a.    <u>Occurrence of a MACT Exceedance or Non-Compliance with a Portland Cement MACT Emissions Limit in Violation of Paragraph 13.a or b (except the Carbon Monoxide (CO) Emissions Limit addressed in Paragraph 41.b below)</u>.  Defendant shall be liable for the following stipulated penalties for each violation of Paragraph 13.a or b above arising from an HWC MACT Exceedance (except the HWC MACT CO emissions limit addressed in Paragraph 41.b below) or violation of a Kiln stack emissions limit in the Portland Cement MACT.

| Stipulated Penalty Amount Per Each HWC MACT Exceedance or Violation of a Kiln stack Portland Cement MACT Emissions Limit | Number of Exceedances of or Deviation with Same Limit in Six Month Period (Jan 1 through June 30 and July 1 through December 31 of each Calendar Year) |
|---|---|
| $1000 | 1-5 |
| $1500 | 6-15 |
| $3500 or 1.2 times the economic benefit of non-compliance, whichever is greater. | 16 and above |

b.    <u>Exceedance of the HWC MACT CO Emissions Limit in Violation of Paragraph 13.a.</u>  Defendant shall be liable for the following stipulated penalties for each violation of Paragraph 13.a above arising from an exceedance of the HWC MACT CO emissions limit set

forth in 40 C.F.R. § 63.1220(a)(5)(i), while hazardous waste fuels are in the combustion

chamber.

| Stipulated Penalty Amount Per Each HWC MACT CO Emissions Limit Exceedance | Number of Exceedances in Six Month Period (Jan 1 through June 30 and July 1 through December 31 of each Calendar Year) |
|---|---|
| $1000 | 1-5 |
| $1500 | 6-30 |
| $3,500 or 1.2 times the economic benefit of non-compliance, whichever is greater. | 30 and above |

    c.    <u>Violation of Paragraph 13.e Indiana SIP Opacity Standards</u>.  Defendant

shall be liable for the following stipulated penalties assessed per violation per Day for each

violation of Paragraph 13.e. arising from non-compliance with a SIP opacity limit or standard.

| Number of 6 Minute Blocks Over Limit Per Calendar Month | Average Excess Opacity of Monthly Six Minute Blocks Above Limit | Stipulated Penalty Amount Per Day |
|---|---|---|
| 1-168 | 1-10% Above Limit | $500 |
| | 11-30% above limit | $750 |
| | 31% above limit or greater | $1500 |
| 169-250 | 1-10% Above Limit | $1000 |
| | 11-30% above limit | $1500 |
| | 31% above limit or greater | $2500 |
| Greater than 250 | 1-10% Above Limit | $3000 |
| | 11-30% above limit | $4000 |
| | 31% above limit or greater | $5000 |

    d.    <u>Other Violations of Paragraph 13</u>.  Defendant shall be liable for the

following stipulated penalties assessed per violation per Day for each violation of Paragraph 13,

arising from non-compliance with any emissions, work practice, monitoring, investigation or

corrective action requirement listed in Paragraph 13 above for which no other stipulated penalty

applies in Paragraphs 41 a-c above.

| Stipulated Penalty Amount Per Day | Period of Delay or Non-Compliance |
|---|---|
| $500 | Days 1-10 |
| $1000 | Days 11-30 |
| $3500 | Days 31 and Beyond |

e.    Violation of Any Requirement in Paragraphs 14-19 of this Consent

Decree.  Defendant shall be liable for the following stipulated penalties assessed per violation

per Day for each violation of a requirement set forth in Paragraphs 14-19 of this Consent Decree.

| Stipulated Penalty Amount Per Day | Period of Delay or Non-Compliance |
|---|---|
| $500 | Days 1-10 |
| $1000 | Days 11-30 |
| $2500 or 1.2 times the economic benefit of non-compliance, whichever is greater | Days 31 and Beyond |

42.    Violation of Additional Injunctive Relief Requirements.  Defendant shall be liable

for the following stipulated penalties assessed per violation per day for each violation of any

requirement in Section VI of this Consent Decree and Appendix A (Additional Injunctive

Relief), except for violations of recordkeeping and reporting requirements which are subject to

stipulated penalties in Paragraph 43 below.

| Stipulated Penalty Amount Per Day | Period of Delay or Non-Compliance |
|---|---|
| $500 | Days 1-10 |
| $1000 | Days 11-30 |
| $2500 | Days 31 and Beyond |

43.    Violation of Recordkeeping and Reporting Requirements.  Defendant shall be

liable for the following stipulated penalties assessed per violation per Day for each violation of

any recordkeeping or reporting requirement in this Consent Decree or in Appendix A.

| Stipulated Penalty Amount Per Day | Period of Delay or Non-Compliance |
|---|---|
| $200 | Days 1-10 |
| $400 | Days 11-30 |
| $2000 | Days 31 and Beyond |

44.    All Other Violations of the Consent Decree.  Defendant shall be liable for the

following stipulated penalties assessed per violation per Day for each failure to comply with any

other Consent Decree term, condition, or requirement that does not have a specific stipulated penalty set forth in Paragraphs 41 - 43 above.

| Stipulated Penalty Amount Per Day | Period of Delay or Non-Compliance |
| --- | --- |
| $200 | Days 1-10 |
| $300 | Days 11-30 |
| $750 | Days 31 and Beyond |

45.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

46.    Either or both Plaintiffs may demand stipulated penalties by sending a written stipulated penalty demand to Defendant pursuant to Section XV (Notices).  Defendant shall pay stipulated penalties to the United States and the State within thirty (30) Days of such demand. Unless the demand instructs otherwise, Defendant shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the State.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

47.    Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

48.    Stipulated penalties shall continue to accrue as provided in Paragraph 45, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement of the Parties or by a decision of EPA and IDEM that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with Interest, to the United States and the State within thirty (30) Days of the effective date of the agreement or the receipt of EPA's or the State's decision or

order.

b.     If the dispute is appealed to the Court, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within thirty (30) Days of receiving the final appellate court decision, unless the appellate court decision remands the matter to the District Court for further proceedings, in which case such penalties shall be due as directed by the District Court within thirty (30) days of its decision on remand, except to the extent the remand decision is appealed in which case the procedures and schedule herein shall be repeated.

49.     Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to violations of any requirement applicable prior to the Effective Date set forth in Paragraphs 14 through 19, provided that stipulated penalties that may have accrued prior to the Effective Date may not be demanded or collected unless and until this Consent Decree is entered by the Court.

50.     Defendant shall pay stipulated penalties owing to the United States and the State in the manners set forth in Paragraph 9 with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

51.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such penalties, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or

the State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

52.    The payment of penalties and Interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

53.    Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' or States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States and State expressly reserve the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.    FORCE MAJEURE

54.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

55.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice by email to EPA and the State recipients listed in Section XV (Notices) within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven (7) Days thereafter, Defendant shall provide in writing to EPA and IDEM an explanation and description of the reasons for the expected delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

56.     If EPA, after a reasonable opportunity for review and comment by IDEM, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA and IDEM for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA

31

and/or IDEM will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

57.     If EPA, after a reasonable opportunity for review and comment by IDEM, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA and/or IDEM will notify Defendant in writing of its decision.

58.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's or IDEM's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 54 and 55.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and IDEM and the Court.

## XI.    DISPUTE RESOLUTION

59.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism for Defendant to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Defendant arising under this Decree.

60.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when Defendant sends a written Notice of Dispute to the United States

and State in accordance with Section XV (Notices).  Such Notice of Dispute shall state clearly

the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) Days

from the date the dispute arises, unless that period is modified by written agreement of all

Parties.  If the Parties cannot resolve a dispute by informal negotiations, then the position

advanced by the United States (or the State if the United States has not advanced a position) shall

be considered binding unless, within thirty (30) Days after the conclusion of the informal

negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

61.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution

procedures, within the time period provided in the preceding Paragraph, by sending a written

Statement of Position to the United States and the State in accordance with Section XV (Notices)

regarding the matter in dispute as provided herein.  The Statement of Position shall include, but

need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and

any supporting documentation relied upon by Defendant.

62.    The United States, after consultation with the State, will send Defendant its

Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of

Position.  The United States' Statement of Position shall include, but need not be limited to, any

factual data, analysis, or opinion supporting that position and any supporting documentation

relied upon by the United States.  The United States' Statement of Position is binding on

Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with

the following Paragraph.

63.    Judicial Dispute Resolution.  Defendant may seek judicial review of the dispute

by filing with the Court and serving on the United States and the State a motion requesting

judicial resolution of the dispute.  The motion must be filed within twenty (20) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

64.     The United States (or, if applicable the State) shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

65.     <u>Standard of Review</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 61 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA and IDEM under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States (or if applicable the State) is arbitrary and capricious or otherwise not in accordance with law.

b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 61, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

66.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 48.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

### XII.    INFORMATION COLLECTION AND RETENTION

67.     The United States and the State and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendant's compliance with this Consent Decree.

68.     Upon request, Defendant shall provide EPA and IDEM or their authorized representatives splits of any samples taken by Defendant.  Upon request, EPA and IDEM shall provide Defendant splits of any samples taken by EPA and IDEM.

69.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in

electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

70.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver any such documents, records, or other information to EPA and IDEM.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

71.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to

any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

72.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

73.    This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action that occurred prior to the Date of Lodging.

74.    The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 73.  The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.  Except as specifically provided in this Consent Decree, including Paragraph 75 below, Defendant reserves its right to contest any such action of proceeding and to raise all available legal and factual defenses thereto.

75.    In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the

Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense

or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion,

claim preclusion, claim-splitting, or other defenses based upon any contention that the claims

raised by the United States or the State in the subsequent proceeding were or should have been

brought in the instant case, except with respect to claims that have been specifically resolved

pursuant to Paragraph 73.

76.    This Consent Decree is not a permit, or a modification of any permit, under any

federal, State, or local laws or regulations.  Defendant is responsible for achieving and

maintaining complete compliance with all applicable federal, state, and local laws, regulations,

and permits; and Defendant's compliance with this Consent Decree shall be no defense to any

action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

The United States and the State do not, by their consent to the entry of this Consent Decree,

warrant or aver in any manner that Defendant's compliance with any aspect of this Consent

Decree will result in compliance with provisions of the CAA, 42 U.S.C. § 7401 *et seq*. or with

any other provisions of federal, state, or local laws, regulations, or permits.

77.    This Consent Decree does not limit or affect the rights of Defendant or of the

United States or the State against any third parties, not party to this Consent Decree, nor does it

limit the rights of third parties, not party to this Consent Decree, against Defendant, except as

otherwise provided by law.

78.    This Consent Decree shall not be construed to create rights in, or grant any cause

of action to, any third party not party to this Consent Decree.

## XIV.    COSTS

79.    The Parties shall bear their own costs of this action, including attorneys' fees,

except that the United States and the State shall be entitled to collect the costs (including

attorneys' fees) incurred in any action necessary to enforce this Consent Decree or collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant

## XV.   **NOTICES**

80.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email), addressed as follows:

|  |  |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-09889/4 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-2-1-09889/4 |
| As to EPA email: | r5ardreporting@epa.gov; and<br>Schenandoah.jason@epa.gov |
| As to EPA mail: | Compliance Tracker, ECA-18JAir Enforcement and Compliance Assurance Branch<br>U.S. Environmental Protection Agency Region 5 77 W. Jackson Boulevard Chicago, Illinois 60604 |
| As to IDEM by email: | AirCompl@idem.IN.gov |
| As to IDEM by mail: | Phil Perry<br>Indiana Department of Environmental Management<br>Chief, Air Compliance Branch<br>100 North Senate Avenue<br>MC-61-53, IGCN 1003<br>Indianapolis, Indiana 46204-2251 |
| As to the Indiana Attorney General's Office: | Aleksandrina P. Pratt<br>Deputy Attorney General<br>302 West Washington St, IGBS 5th Floor<br>Indianapolis, IN 46204<br>aleksandrina.pratt@atg.in.gov |
| As to Defendant by mail | Plant Manager |

Lone Star Industries, Inc.
Greencastle Plant
3301 South County Road 150 West
Greencastle, IN 46135

and

General Counsel
Buzzi Unicem USA, Inc.
100 Brodhead Road, Suite 230
Bethlehem, PA 18017

As to Defendant by email:          daniel.nugent@buzziunicemusa.com
                                   patrick.lydon@buzziunicemusa.com
                                   contactus@buzziunicemusa.com

81.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

82.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.   EFFECTIVE DATE

83.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket, provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII.  RETENTION OF JURISDICTION

84.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. <u>MODIFICATION</u>

85.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

86.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 65, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.   <u>TERMINATION</u>

87.     This Consent Decree may be terminated when all of the following conditions have been satisfied:

a.      Defendant has maintained satisfactory compliance with all requirements of Section V (Compliance Requirements) for a period of 3 years;

b.      Defendant has completed the requirements of Section VI (Additional Injunctive Relief); and

c.      Defendant has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree.

88.     When all of the conditions set forth in Paragraph 87.a-c above have been satisfied, Defendant may serve upon the United States and the State a Request for Termination, stating that

Defendant has satisfied those requirements, together with all necessary supporting documentation.

89.    Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for Termination of this Consent Decree.  If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

90.    If the United States, after consultation with the State, does not agree that the Decree may be terminated, then Defendant may invoke Dispute Resolution under Section XI. However, Defendant shall not seek Dispute Resolution of any dispute regarding Termination until ninety (90) Days after service of its Request for Termination.

## XX.    PUBLIC PARTICIPATION

91.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

## XXI.    SIGNATORIES/SERVICE

92.    Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and

IDEM/State certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

93.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.  INTEGRATION

94.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## XXIII. FINAL JUDGMENT

95.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, State, and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Federal Rules of Civil Procedures 54 and 58.

## XXIV. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

96.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2), performance of Section II (Applicability), Paragraph 6; Section V (Compliance Requirements), Paragraphs 13

through 20; Section VI (Additional Injunctive Relief), Paragraphs 21 through 26; Section VII (EPA and IDEM Review, Comment and Approval), Paragraphs 28 and 31; Section VIII (Reporting Requirements), Paragraphs 32-33 and 36; Section XIII (Information Collection and Retention), Paragraphs 67 through 70, is restitution, remediation, or required to come into compliance with the law.

## XXV.  **APPENDICES**

97.    The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Description of the Environmental Mitigation Projects Defendant Shall Implement Pursuant to Section VI.

Date: 8/9/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Roger A.G. Sharpe, Clerk

BY: _____
        Deputy Clerk, U.S. District Court

FOR THE UNITED STATES OF AMERICA:

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/ Elizabeth L. Loeb
ELIZABETH L. LOEB
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611
elizabeth.loeb@usdoj.gov

JOHN E. CHILDRESS
Acting United States Attorney

*/s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204
317-226-6333
shelese.woods@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

T. Leverett Nelson
Digitally signed by T. Leverett Nelson
Date: 2021.05.26 12:49:27 -05'00'

T. Leverett Nelson
Regional Counsel
U.S. Environmental Protection Agency, Region 5

ANDRE DAUGAVIETIS
Digitally signed by ANDRE DAUGAVIETIS
Date: 2021.05.06 15:24:47 -05'00'

Andre Daugavietis
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5
Office of Regional Counsel

FOR THE STATE OF INDIANA:

Date: _05/17/2021_

OFFICE OF THE INDIANA ATTORNEY GENERAL

ALEKSANDRINA P. PRATT
Deputy Attorney General

PATRICIA ORLOFF ERDMANN
Chief Counsel for Litigation
Office of the Indiana Attorney General
302 West Washington Street, IGCS 5th Floor
Indianapolis, IN 46204

BRUNO L. PIGOTT
Commissioner
Indiana Department of Environmental Management

VALERIE TACHTIRIS
Office of Legal Counsel
Indiana Department of Environmental Management

47

FOR DEFENDANT LONE STAR INDUSTRIES, INC.:

4/20/21
Date

Daniel B. Nugent
Sr. Vice President – Technical Services and
Government Affairs

**APPENDIX A**
Greencastle Mitigation Projects

Lone Star shall implement and commence operation of the following mitigation projects at the Greencastle Facility no later than thirteen (13) months after the Effective Date.

1. **Dust Collector Projects**

   A.    **Clinker Silos Additional Bag Filter**

   Currently, the seven clinker silos are controlled by two dust collectors, one near the center and another toward the west end of the silo bank. Lone Star shall install and operate a third 4500 acfm bag filter at the east end of the seven silo bank. This additional bag filter will be linked with the existing two bag filters and will provide additional control to the silo bank.

   B.    **Raw Mill Area Additional Bag Filter**

   Lonestar shall install a 2500 acfm bag filter to the raw mill feed system, at the limestone apron feeder. Dust control for this source is currently provided by the raw mill building enclosure. This additional bag filter will improve dust control when limestone is being distributed to the limestone bin.

2. **Road Paving Projects**

   Lonestar shall pave the following traffic areas with concrete to minimize dust generation at material handling locations and allow the paved areas to be managed under the general paved road housekeeping program.

| Area | Traffic Type | Approximate Dimensions (ft) |
|---|---|---|
| Raw Material Storage Access | Delivery Trucks, Front-end Loaders | 24 x 325 |
| Additive Feed Hopper | Front-end Loaders | 40 x 62 |
| Reject Rock Collection | Front-end Loaders | 54 x 32 |
| Coal Storage Access Road | Delivery Trucks, Front-end Loaders | Irregular (3650 ft2) |